BROWN *vs.* TABER.

Where a party endorsed an *accommodation note* for another at *sixty* days, with a view of enabling the maker to obtain a discount at a bank, and the maker after refusal by the bank to discount the note, passed it off when it had but 18 days to run in the purchase of *lottery tickets* at *retail price,* the vendor of the tickets knowing that he was not a *dealer* in tickets, and having been informed that the note had been in the bank, and the *bank marks* being upon it, *it was held,* in an action against the endorser, that the circumstances combined were sufficient to have put the vendor of the lottery tickets on inquiry, and that he was thus chargeable with notice of the misapplication of the note, and that the endorser was not liable.

THIS was an action of assumpsit, tried at the Albany circuit, before the Hon WILLIAM A. DUER, then one of the circuit judges.

The plaintiff claimed to recover as the *endorsee* of a note for $115, bearing date 21st *April,* 1828, payable at the *Mechanics' and Farmers' Bank* in *sixty* days, made by one *Groat* to the defendant, and endorsed by him. The note was endorsed for the accommodation of Groat, to enable him to redeem the property of one of his neighbors taken in execution ; it was offered for discount at the bank by a son of the defendant, and on the bank refusing to discount it, it was returned to Groat. On the 5th *June,* 1828, Groat attempted to raise money on the note at the lottery and exchange office of the plaintiff, the clerk of the plaintiff (the latter not being present) refused to cash the note, but on the application of Groat, sold him 23 lottery tickets at $5 per ticket, and received the note in payment ; *five* dollars was the usual price for lottery tickets, except to *dealers* in tickets, to whom the plaintiff sold at *four* dollars ; the clerk knew that Groat was not a dealer in tickets ; he was told by Groat that he had been in the bank with the note, but did not say for what purpose ; the note had on it *bank marks,* i. e. the name of the maker, and time when payable, in the hand writing of one of the bank clerks. On these facts a verdict was rendered for the plaintiff, subject to the opinion of this court. The cause was argued by

ALBANY,
October, 1830.

Brown
v.
Taber.

*B. M. Wood*, for the plaintiff.

*A. Taber*, for the defendant.

*By the Court*, MARCY, J.   Groat, by putting the note in circulation, acted in bad faith towards the endorser; and if the person who received it of him knew the circumstances under which it was passed, or is to be considered chargeable with notice, the plaintiff cannot recover.   It is not pretended that the clerk of the plaintiff who received the note had actual knowledge of the misappropriation of it; but it is insisted by the defendant that he knew such facts and circumstances as should have put him on enquiry.

The verdict was taken subject to the opinion of the court upon the facts of the case; we are therefore to say whether the evidence was sufficient to charge the plaintiff with notice of Groat's improper conduct in putting off the note. Notice to the agent is notice to the principal.   The plaintiff was a dealer in lottery tickets, and the note was received in payment for tickets sold to Groat; the note was therefore received, it is said, in the due course of business.   Even if so received, there may be attendant circumstances, destroying the *bona fides* of the transaction.   It is alleged, on the part of the defendant that such circumstances exist in this case. Although there is no one circumstance decisive of the case, yet the circumstances combined, appear to me to be sufficient to have put the plaintiff on enquiry.   In the first place, the *drawer* had possession of the note; this fact warranted the inference that the defendant's endorsement was for his accommodation.   The plaintiff's agent knew it had been in the bank; he must therefore have understood one of two things, either that the note had been negotiated and discounted at the bank, or lodged there for collection and taken up by the drawer before its maturity, (an occurrence not very probable,) or that the bank had refused to discount it. Indeed, I think this latter fact was sufficiently brought to the knowledge of the plaintiff's agent; he was told the note had been in the bank, and it had marks on it made at the bank. He was also applied to in the first instance as a broker to discount it.   Some consequence, I think, should be attached

to the fact, that after the drawer had failed to obtain money on it, he passed it off for a large quantity of lottery tickets, for which he gave the *retail* price, it being known that he was not a dealer in that article. Again, when passed, it had almost arrived at maturity, it having but 18 days to run. All these circumstances combined amount, in my judgment, to a sufficient notice of the fraud that Groat was practising on the defendant in putting the note in circulation.

Judgment for defendant.