NEW - YORK,
May, 1832.

Wardell
v.
Howell.

---

## WARDELL and others *vs.* HOWELL.

A note endorsed for the *accommodation* of the maker, delivered to him to be used in *renewal* of a former note about to fall due at a bank, transferred by the maker as collateral security for the payment of *another debt* owing by him, cannot be enforced against the *endorser* by the creditor, to whom such transfer is made.

Where a note has effected the substantial purpose for which it was designed by the parties, an *accommodation endorser* cannot object that it was not effected in the *precise manner* contemplated at the time of its creation; but where a note has been diverted from its original destination, and fraudulently put in circulation by the maker or his agent, the holder cannot recover upon it against an accommodation endorser without shewing that he received it in good faith, in the ordinary course of trade, and paid for it a valuable consideration.

Receiving the transfer of a note as collateral security for the payment of a *pre-existing debt*, is not taking it in the ordinary course of trade, and for a valuable consideration, as between the *creditor* and an *accommodation endorser*.

THIS was an action of assumpsit, tried at the Orleans circuit in March, 1830, before the Hon. ADDISON GARDINER, one of the circuit judges.

The suit was by the plaintiffs, as the *endorsees*, against the defendant, as the *endorser* of a promissory note made by William Hughes and Harry Moor, bearing date 30th September, 1826, for the sum of $150, payable to the order of Gilbert Howell and David Morris, three months after date, payable and *negotiable* at the Bank of Ontario in Canandaigua. Howell, one of the endorsers, was sued alone, and the declaration set forth an endorsement only by him. The note was endorsed by the payees for the *accommodation* of the drawers,

and was made and endorsed for the express purpose of taking up a previous note at the bank at Canandaigua, made and endorsed by the same parties for the accommodation of the drawers, and which was about to fall due. The note was delivered to *Hughes*, one of the drawers, to present at the bank *for renewal of the former note ;* it was presented, but the bank refused to receive it. Hughes then proceeded to the city of New-York, where he was sued by the plaintiffs on a demand which they had against him on a note for $178. Hughes offered the plaintiffs that if they would stop the suit against him, he would pay the costs, and turn out the note endorsed by Howell and Morris as security for the note that they held against him. The plaintiffs acceded to his proposition ; he paid the costs and delivered the note in question to them, and they gave him a receipt acknowledging that they had received the note *which, when paid,* was to apply on their note against him for $178. When the plaintiffs took the note endorsed by the defendant, they observed that the date was *in blank,* upon which Hughes said that he would fill it up, and did so in their presence. At the time the note in question was delivered to the plaintiffs, Howell and Moor had dissolved partnership, which before had existed between them, and they were insolvent, which was known to the plaintiffs, who, however, took the note without knowledge of the circumstances under which it was made. The endorsement by both the payees, Howell and Morris, was proved, and the defendant objected to the note being read in evidence, on account of the variance between the proof and declaration in this particular, but the objection was overruled. The judge charged the jury that if the discharge of the suit formed the whole or even a part of the consideration for the transfer of the note by Hughes to the plaintiffs, they were entitled to recover ; if, however, the note was received by the plaintiffs in bad faith, with knowledge of the fraud, or under circumstances to put men of ordinary prudence on inquiry, the defendant was entitled to a verdict. The jury found for the plaintiffs for the amount of the note, with interest. The defendant moves for a new trial.

NEW-YORK,
May, 1832.

Wardell
v.
Howell.

NEW-YORK,
May, 1832.

Wardell
v.
Howell.

*C. P. Kirkland,* for the defendant.

*Greene C. Bronson,* (attorney-general,) for the plaintiffs.

*By the Court,* SUTHERLAND, J. The verdict of the jury conclusively exonerates the plaintiffs from all fraud, and also from the imputation of want of prudence or ordinary discretion in the transaction. But the question still remains, did the plaintiffs acquire this note in the usual course of trade, and for a valuable consideration, within the meaning of those terms, when applied to the class of cases to which this belongs? This note has not answered the object for which it was endorsed by the defendant; it was not intended for the benefit of the makers generally, but for the special purpose of being substituted for, or enabling the makers to take up another note which the defendant had endorsed for them, and which was about falling due. The endorsers did not intend to extend their responsibility for the makers, but to substitute the one note for the other. Where a note has effected the substantial purpose for which it was designed by the parties, an accommodation endorser cannot object that it was not effected in the precise manner contemplated at the time of its creation. Upon that principle, the cases of *Powell* v. *Waters,* 17 *Johns. R.* 176, *The Bank of Chenango* v. *Hyde and others,* 4 *Cowen,* 567, and *The Bank of Rutland* v. *Buck,* 4 *Wendell,* 66, were decided. See also 2 *Gall.* 233; *Payson* v. *Coolidge,* 2 *Wheat.* 66. But where a note has been diverted from its original destination, and fraudulently put in circulation by the maker or his agent, the holder cannot recover upon it against an accommodation endorser, without shewing that he received it in good faith, in the ordinary course of trade, and paid for it a valuable consideration. *Woodhull* v. *Holmes,* 10 *Johns. R.* 231. *Skelding & Haight* v. *Warren,* 15 *id.* 270. *Brown* v. *Taber,* 5 *Wendell,* 566. *Vallett* v. *Parker,* 6 *id.* 615, *and the authorities cited in those cases.*

That it was an act of gross fraud in Hughes to put this note in circulation, is not and cannot be denied; and the only question is, whether the plaintiffs took it in the ordinary

course of trade, and paid for it a valuable consideration.

The whole weight of authority and every consideration of
justice and equity are against the plaintiffs upon this point.
*Miller* v. *Race*, 1 *Burr*. 452. *Grant* v. *Vaughan*, 3 *id*. 1526.
*Peacock* v. *Rhoades, Doug*. 633. *Collins* v. *Martin*, 1 *Bos.
& Pul*. 648. *Lawson* v. *Weston*, 4 *Esp. N. P. R*. 56.
*Gill* v. *Cubitt and others*, 3 *Barn. & Cres*. 466. In *Cod-
dington* v. *Bay*, 20 *Johns. R*. 637, the English cases upon
this branch of the law are very fully and ably reviewed.
The circumstances of that case and the one at bar are very
similar, and the principles established there are decisive of
this case. The Coddingtons were the holders of negotiable
paper, which they had received from Randolph and Sav-
age as security against certain responsibilities which they
had assumed for them. The notes thus passed to the Cod-
dingtons had been received by Randolph and Savage, in
payment for a vessel belonging to Bay, which they as his
agents had sold for him. The notes, though payaple to
Randolph and Savage, were in fact the property of Bay;
Bay filed his bill to compel the Coddingtons to account to
him for such of the notes as had been paid, and to surrender
such as still remained in their hands. The Coddingtons
took the note in good faith, without any knowledge of, or
reason to suspect the fraud. The case therefore depended
upon precisely the same principles as though Bay had been
an accommodation endorser upon paper fraudulently put
in circulation, and the action had been brought against him
by the Coddingtons in that capacity, and so it was consid-
ered by the court; and it was held that the Coddingtons
did not receive the notes in the usual course of business,
nor pay for them a valuable consideration, within the legal
import of those terms. The only distinction between that
case and the present is, that the Coddingtons, when they
received the notes from Randolph and Savage, had no sub-
sisting demand then due against them, but were only liable
for notes lent to and endorsed for them; but that circum-
stance is not important, and no weight was attached to it in
the opinions delivered in the case. They proceeded upon
the broad ground, that receiving these notes for a pre-exist-

NEW-YORK,
May, 1832.

Wardell
v.
Howell.

ing debt was not receiving them in the usual course of business, and for a valuable consideration. Judge Spencer says: "I understand by the usual course of trade, not that the holder shall receive the bills or notes thus obtained as securities for antecedent debts, but that he shall take them in his business, and as payment for a debt contracted at the time." And again he says: "All the cases cited have been decided on the ground that the notes or bills were taken in the usual course of trade, and for a present consideration paid. Not one of the cases is like the present, where notes or bills thus passed were received in security of an antecedent debt." Judge Woodworth says: "Although the rule is laid down generally, that the holder will be protected where the bill or note is taken in the usual course of trade, and for a fair and valuable consideration, without notice, yet, in every case it appears that the holder gave credit to the paper, received it in the way of business, and gave money or property in exchange, and the observation is fully sustained by the English cases already cited. Something must be paid in money or property, or some subsisting debt satisfied, or some new responsibility incurred, in consequence of the transfer of the paper." Viele, senator, says: "Though an indemnity for prior responsibilities may be a sufficient consideration for some purposes, and between parties, &c. yet it cannot be taken as sufficient in principle to bar the owner of his title by a fraudulent transfer." And Judge Woodworth says: "The rule is not satisfied, if enough is shown to make out a consideration as between the holder and the agent who assigned or transferred the paper. If nothing more is required, the appellants must prevail; for the notes were passed for the indemnity of the Coddingtons, and so far as Randolph and Savage are concerned, that formed a good consideration." So in this case, as between the plaintiffs and Hughes, the discontinuing the suit against him and his prior indebtedness were a good consideration for the transfer of the note in question. But they do not constitute that valuable consideration which the policy of the law requires in order to sustain an action against an endorser under the circumstances of this case.

The charge of the judge was erroneous, and a new trial must be granted; and as my opinion goes to the foundation of the plaintiffs' action, it is unnecessary to consider the other points which arose at the trial.

New trial granted; costs to abide the event.