Messick & Co. *vs.* Roxborough & Wilcox.

In General Term—November 1854.

Storer, Gholson, and Spencer, J. present.

MESSICK AND COMPANY *vs.* ROXBOROUGH AND WILCOX.

The indorsee of a bill of exchange, or promissory note, received in good faith, before due, as collateral security for an existing debt, is protected from all the equities of the maker, or acceptor, of which he had no notice, at the time of the assignment.

Error to Special Term.

Opinion of the Court by Judge Storer.

On the trial of this cause at the Special Term, it was proved that the defendant Roxborough, had purchased the interest of his partner Wilcox, in an extensive grocery store; the price paid was $5000, and the purchaser made his ten notes for $500 each, payable at different dates to Wilcox, or order. These notes were transferred to the plaintiffs to secure a large sum of money, due by Wilcox to them; the notes were assigned in good faith, without any knowledge on the part of the plaintiffs, that Roxborough had any equity that he could assert against their payment.

On this state of fact, the defendant, Roxborough, contended that, as the notes had been transferred as collateral security for an existing debt, the plaintiffs were not entitled to the protection given by law to indorsees, for value, before the notes were due. The Judge, however, held that the plaintiffs were protected, and decided, that the indorsee of negotiable paper, the consideration of the transfer of which, was to secure an existing debt, was within the rule, that saves to bona fide indorsees for value, the right to hold the notes freed from all the equities of the maker.

To this opinion, an exception was taken, and the whole

question is now before us; we are asked to decide that the opinion of the Court at Special Term, is not sustained by the law of the case, and to this point only is our attention directed.

Before the case of Coddington *vs.* Bay, 20 *Johns.* 637, was decided by the Court of Errors, in New York, which introduced, we apprehend, a different rule than had previously prevailed, we cannot find any similar adjudication upon the point that was there discussed. It would seem to have been admitted, that the same consideration that would sustain any ordinary contract, if existing in good faith, would authorize the transfer of a note or bill, and protect the indorsee, and such consideration might consist, "either in some right, interest, profit, or benefit accruing to the party who made the contract, or some forbearance, detriment, loss, responsibility, or act, or labor, or service, on the other side." *Story on Promissory Notes*, §186; Pillans and Rose *vs.* Van Mierop and Hopkins, 3 *Burrows* 1663.

The Supreme Court of New York, however, in 1822, in the case we have alluded to, held, that "where notes had been transferred, as security against responsibilities assumed by a third person as indorsee, and not received in the usual course of business, nor for a present consideration, the indorsee was not entitled to hold the notes against the true owner." This case had already been examined by Chancellor Kent, in 5 *Johns. Chy. Rep.* 54, who seems to have placed his decision more upon the peculiar circumstances of the case, than a desire to establish any new principle, or change any established rule. He had before held, in Warren *vs.* Lynch, 5 *Johns.* 244, that the transfer of a note or security for a pre-existing debt, as

well as the advance of money, constituted the holder a holder for value.    The opinions of the various Judges in Wardell *vs.* Howell, 9 *Wendell* 170; Rosa *vs.* Brotherson, 10 *do.* 85; Ontario Bank *vs.* Worthington, 12 *do.* 593; and Payne *vs.* Cutler, 13 *do.* 605; as well as Francia *vs.* Joseph, 3 *Edw. Chy. Rep.* 182; following the case of Coddington and Bay, fully sustain it.    But the ruling in 16 Wendell 659, Smith *vs.* Van Loan; in 21 *Wendell* 499, Bank of Salina *vs.* Babcock; and 24 *Wendell* 115 have materially changed the former decisions, and recognized the principle, which, we suppose, was sustained by the earlier authorities, and the law now appears to be settled in New York, that in all cases, except where the transfer is made as collateral security for an existing debt, the indorsee is protected, 2 *Sandford Sup. C.* 151, Fenley *vs.* Prichard; 2 *do. Chy. Rep.* 166, Clark *vs.* Ely; 4 *Barbour Sup. C.* 304, Mickley *vs.* Colvin.

The Supreme Court of the United States had always held, whenever the question was before them, "that it made no difference, whatever as to the rights of the holder, whether the debt, for which the negotiable instrument is transferred to him, is a pre-existing debt, or one that is contracted at the time of the transfer.    In each case he equally gives credit to the instrument.

Coolidge *vs.* Payson, 2 *Wheaton* 66–70–73.

Townsley *vs.* Samrall, 2 *Peters' Rep.* 170–182;

In Swift *vs.* Tyson, 16 *Peters* 2, the whole matter was fully examined, and the New York cases we have referred to, reviewed.    Judge STORY in giving the opinion of the court, overruled the decision in Coddington *vs.* Bay; and the subsequent rulings of the New York courts, and held that "receiving a negotiable note in payment of, or as se-

curity for a pre-existing debt, is according to the known usual course of trade and business, and the assignee is a bona fide holder for value." This opinion was pronounced in 1842, and was so thoroughly opposed to the New York decisions, that the Court of Errors of that state, in December, 1843, found it necessary to revise their former opinions, and in Stalker *vs.* McDonald, 6 *Hill* 93, the whole ground of argument was re-opened, and all the authorities passed in review. Chancellor Walworth held, " that where the negotiable paper was received as security for an antecedent debt, the indorsee was not a holder for value in good faith." The former ruling as to the insufficiency of a precedent debt to sustain a transfer, was not sustained, and the result of the opinion is, that in all cases where the transfer is absolute, and not as security, the assignee is protected,—thus virtually modifying the former decisions, and confining their application to collateral transfers solely. It is not a little singular that so laborious a compiler as the Chancellor, and whose opinion was certainly intended to countervail the very erudite decision of Judge STORY in Swift *vs.* Tyson, should have overlooked the case of Williams *vs.* Smith, 2 *Hill* 301, decided in 1842, where it was held that the holder of commercial paper, assigned *as* collateral security, is to be regarded as a holder for value, and is not bound by the equities existing between the original parties.

In the last edition of his Commentaries, volume the third, page 215, Chancellor Kent refers to the decision in Swift *vs.* Tyson, as well as the ruling in Stalker *vs.* McDonald, and approves of the former case "as the plainer and better doctrine."

Although the doctrine is in the State Courts virtually

exploded, that the indorsee of a negotiable security is not protected, who receives it in payment of an existing debt, it has still been held that if assigned as collateral security only, the holder is not to be regarded as a bona fide holder for value.  Although the reason of the distinction, as to what does and does not constitute a holder for value, has entirely ceased, with the acknowledged liability of the maker to an indorsee, who has taken the note in discharge of an antecedent claim, it is contended that the condition of the parties is entirely changed, where the assignment is for security only, as in 10 *N. H.* 266, Jenness *vs.* Bean; Williams *vs.* Little, 2 *Grattan* 262; Painter *vs.* Zane, 31 *Maine* 207; Bramball *vs.* Becket; see also 1 *Am. Leading Cases,* Hare and Wallace, where the cases are collected.

On the other hand, the Supreme Court of the United States, have again adopted the law as expounded in Swift *vs.* Tyson, in deciding the case of the Bank of the Metropolis *vs.* The New England Bank, 17 *Peters* 174.    The Supreme Court of Massachusetts in 8 *Metcalf* 40; Chicopee Bank *vs.* Chapin, hold that the transfer of a bill, as collateral security for a pre-existing debt, creates a valid consideration; and in the subsequent case of Blanchard et al *vs.* Stevens, 3 *Cushing* 168, the question was directly decided.    The authorities were fully examined by Judge DEWEY, who says, "All the cases, those of the New York Courts included, concur in this, that if the party receiving the note, parts with anything valuable, he is entitled to enforce the payment of the note irrespective of the equities between the original parties.    But, may you not as well show a legal consideration, by showing forbearance to act, as by showing an act done?    A damage to the

promisee is all that is necessary to show a good consideration for a promise; and ought not the same rule to apply in protection of a note transferred to him? If the party had not received the note as collateral security, he might have obtained other securities, or perhaps payment in money. It is a fallacy to say that if the plaintiffs are defeated in their attempt to enforce the payment of these notes, by allowing the defence to prevail, yet nevertheless they are in as good a situation as they would have been in, if the notes had not been transferred to them. The fact is assumed, and not proved, and from the very nature of the case, is matter of entire uncertainty. The convenience and safety of those dealing in negotiable paper seem to require and justify the rule, that when a person takes a negotiable note not overdue, or apparently dishonored, and without notice actual or constructive, of the want of consideration, or other defence thereto, whether taken in payment for a precedent debt, or as collateral security for an existing debt, the holder should have the legal right to enforce the same against the parties thereto, notwithstanding such defence might have been effectual as between the original parties." The same principle has been lately recognized by the Court of Appeals of Maryland, 9 *Gill.* 13; Gwynne and Co. *vs.* Lee et al; and by the Supreme Court of Indiana, in 2 *Smith's Reports* 89, Valette *vs.* Mason et al. In King *vs.* Gayoso, for the use of State, 4 *Condensed Reports Louisiana* 553, Judge MARTIN held: "To pledge a note is, therefore, to make a legitimate use of it. In the usual course of business, notes and bills of exchange are used to pay debts, make purchases, or raise money by discount or pledge. He, therefore, who gives a bill or note, authorizes the use of

45

it for any of these purposes, and must know, by such a disposal of it, the payee will enable the indorsee to repel any claim of the maker, on the score of want of consideration, concealment, or compensation. "Volenti non fit injuria."

Before the ruling in Swift *vs.* Tyson, the Supreme Court of Ohio, in Riley *vs.* Johnson et al. 8 *Ohio* 526, had held to the authority of Coddington *vs.* Bay, but after the decision in *Swift and Tyson*, the same Court reviewed their former opinion, using the following language : "It is believed that the law, as thus settled by the highest judicial tribunal in the country, will become the uniform rule of all, as it is now of most of the States, and, in a country like ours, where so much communication and interchange exist between the different members of the confederacy, to preserve uniformity in the great principles of commercial law, is of much interest to the commercial world." Carlisle *vs.* Wishart, 11 *Ohio* 152. The principle thus recognized, was again admitted in 17 *Ohio* 575, Gordon *vs.* Kearney; the Court remarking "that we do not perceive any difference in principle between an advance of money and a balance suffered to remain on the faith of mutual dealing. In the one case as in the other, credit is given, upon the credit of the paper deposited."

The English cases, we think, are uniform. Without referring to those that the various Courts who have discussed the doctrine involved, have already so fully examined, and either admitted or overruled, we would quote only the late case of Pourier *vs.* Morris, decided in Queen's Bench, Easter Term, 1853, 2 *Ellis and Blackburn* 88; where it is distinctly held by Lord Campbell, "that when a creditor receives a bill, as security for an

antecedent debt, he is a holder for value, and is to be protected, as other indorsees of negotiable instruments."

Such we believe is the fair exposition of the law as it is now held in England; and the reference we have made to American decisions, will exhibit the rule, as it is held, by the Courts of the several States.

The result of all the argument that has been urged in these cases, to exclude the indorsee who holds for collateral security only, seems to be this, that such holder has not taken the paper in the usual course of trade, or that he has lost nothing by the arrangement, should he be subjected to the equities of the original parties to the instrument assigned.

How such a conclusion can be legitimately arrived at, when it is admitted that the transfer of a note in payment of an existing debt, is within the rule by which a holder for value is protected, it is difficult to understand. In the last case, the same reasons exist to deprive the holder of his remedy, as are found in the first; both are equally within the distinction that has been taken, or neither—both receive the bill for a precedent debt, and if the bill proves to be worthless, the original debt may be sued upon. The assertion, that the assignee loses nothing if the security is taken away, and has paid nothing at the time he received it, embraces both classes of creditors equally: and the usual course of business would seem clearly to include both. We cannot appreciate the principle upon which either can be said to be without the protection secured to bona fide creditors; nor can we find that any such distinction is ever made or understood among commercial men. If such distinction is said to exist, it is laid down arbitrarily by the New York Courts and those

who have followed their ruling; no reason is given, and no practice asserted to authorize it; while, on the contrary, the ground upon which the consideration of any ordinary contract is required to be sustained, is well understood and universally acted on, that a valuable consideration sufficient to authorize the assignee of a note, to claim title by its transfer, ought to give, when the transfer is made in good faith, all the benefits of the assignment; and whenever it is attempted to create exceptions to the rule, the result has been, and always will be, uncertainty in the administration of justice, and confusion in the mercantile idea of what is, and what is not, the usual course of trade.

It is plain that the analogies of the law in other cases, where the rights of purchasers for value without notice, are regarded, are in harmony with the rule we have indicated. A mortgagee, who takes his deed as security for money loaned, or a debt already incurred, without notice of an outstanding equity, is alike favored by the Courts, and the grantee of real or personal property, is equally protected, whether the purchase money was paid in cash, or in discharge of a prior debt against the grantor. And this idea is acted upon in the every day business of the world. A bank renews notes already due, and the ultimate payment of the original discount, may not be made until a series of such renewals has been taken; meanwhile, other notes are deposited to secure them, either as a substitute for an endorsement that has become worthless, or to obtain an extension of credit on the original loan; and yet it has been said, that in such a transaction, the decision in Coddington *vs*. Bay can properly apply, though the usual course of business justified the taking of such additional security, and the parties interested conducted in good faith.

We cannot so understand the rule, as it is laid down by Lord Mansfield, and the many eminent judges, who have succeeded him in the English courts; nor do we find, until the New York courts asserted a contrary doctrine, that there was any doubt or uncertainty in the courts of the United States, as to what was the law applicable to the negotiability of mercantile instruments. We but follow out the ruling of our own Supreme Court, the Supreme Court of the United States, and those of Massachusetts, Louisiana, and Maryland, and re-affirm, we believe, what has been, and what is now held to be an established principle of commercial law—that the indorsee of negotiable paper transferred to him to secure an antecedent debt, if he is a holder in good faith, is equally protected, as if he had paid at the time of the transfer, a full consideration in money for the paper assigned to him.

The judgment of the court in Special Term is affirmed.

MINER, CLARK, and OLIVER for plaintiff.

BALL and SKINNER for defendant.