AYRAULT and CONE *vs.* A. McQUEEN.

Where a note, made by McQ. and indorsed by the defendant for the sole benefit and accommodation of the maker, to enable him to take up a previous note also indorsed by the defendant, was diverted from the purpose for which it was made and indorsed, without the knowledge or consent of the indorser, and transferred to the plaintiffs as security for a precedent debt, the plaintiffs at the same time surrendering to McQ. a security held by them amply sufficient to pay the amount of their previous debt against McQ.; *Held* that this surrender constituted the plaintiffs bona fide holders of the note, for value, and that they were entitled to recover the amount, of the endorser, notwithstanding the diversion.

THIS was an action on a promissory note for $3000, dated August 31st, 1857, made by John McQueen and indorsed by the defendant, payable sixty days from date, at the Albany City Bank. The defendant was an accommodation indorser, and the defense set up was that the note was indorsed for a specific purpose, and was diverted by the maker and transferred to the plaintiff as security for a precedent debt, and

therefore that the plaintiffs were not bona fide holders of the note. The facts, as they appear from the case, are substantially as follows: John McQueen, the maker of the note, was a manufacturer of flour, having a flouring mill at Avon, in the county of Livingston. Prior to the transfer of the note in suit to the plaintiff, John McQueen had procured a note of like amount to be discounted for him by the Genesee County Bank, which note the defendant had indorsed for the accommodation of John McQueen. A short time before the maturity of that note, John McQueen applied to the defendant to indorse another note to take up or renew the note so discounted at the bank, and presented to him the note in suit, the date being left blank. The defendant indorsed the note to renew the note so discounted at the Genesee County Bank, previously indorsed by him, and for no other purpose. The bank refused to renew the note so discounted, and when it matured, the note was protested for non-payment, and the defendant was charged as indorser. Afterwards the note was sued, went into judgment, and was collected out of the property of the defendant. On the 7th day of September, 1857, and after the Genesee County Bank refused to renew the note discounted by it, John McQueen procured the plaintiffs to discount a draft on Carpenter & Cooley of New York for $500. The draft was accompanied with a bill of lading and rail road receipt for a car load of flour, delivered and consigned to Carpenter & Cooley. The plaintiff gave John McQueen, as the proceeds of the draft, $296.85 in money, and a draft on the State Bank in Albany for $200. A short time after this transaction, and the same day, a telegraphic dispatch was received from New York stating that Carpenter & Cooley had failed. The plaintiffs had knowledge of the dispatch, and Cone immediately went in quest of John McQueen. He found him at his house, told him that the plaintiffs had received the intelligence that Carpenter & Cooley had failed, and that they (the plaintiffs) wanted to be secured for the money he had obtained of them. John McQueen immedi-

ately thereupon handed back to Cone the draft of $200 and $141.50 in money, the balance of the money received having been paid out after the draft on C. & C. was discounted, and before Cone saw it. When John McQueen opened his pocket book to take out the draft and money, he saw the note in question, in the condition it was in when indorsed by the defendant. John McQueen handed the note to Cone and said, "Here, take this note and keep it till I hand you the money I have paid out." Cone took the note and subsequently filled up the blank with the date, 31st of August— the word August being written in at the time he got it. John McQueen immediately went to New York to reclaim the flour consigned to Cooley & Carpenter, arrested it at Piermont and consigned it to another house, and subsequently obtained the money for the flour, which was not paid to the plaintiffs. After McQueen returned from New York, he went to Cone and got the bill of lading that accompanied the $500 draft discounted on the day the note was delivered to Cone. At the time McQueen got the bill of lading, nothing was said about this note. At the time the note was delivered to Cone, John McQueen was indebted to the plaintiffs for money loaned, and drafts discounted, before that time; the amount of the indebtedness, including the balance due on the draft last discounted, amounting to $1056.55. The defendant had no knowledge of the disposition made of this note by McQueen, nor did he know that the plaintiffs held it until he received a letter from the plaintiff Cone, dated September 2, 1857, in which Cone stated the purpose for which the note was delivered to the plaintiff. The plaintiff demanded judgment for $1056.55. The defendant insisted that the plaintiffs were not bona fide holders of the note, and that as it had been diverted by John McQueen from the purpose for which it was indorsed by the defendant, and without his knowledge or assent, the defendant was not liable for any part of the note, and requested the court so to charge the jury. The court declined so to charge; to which decision the defendant's coun-

sel excepted.   The court held and decided that under the evidence the plaintiffs were entitled to recover the sum of $155.35 and interest, and directed the jury to find a verdict accordingly.   The jury, under the direction of the court, rendered a verdict for the plaintiffs for $170.64.   The plaintiffs entered up a judgment on the verdict, and the defendant appealed from the judgment.

*James Wood, jun.,* for the appellant.

*Scott Lord,* for the respondent.

*By the Court,* E. DARWIN SMITH, J.   Confessedly the promissory note on which this action was brought, was made and indorsed for the sole benefit and accommodation of the maker, and was diverted from the purpose for which it was made and indorsed, without the knowledge or assent of the indorser.   The defendant, therefore, is clearly not liable upon his indorsement, unless the plaintiffs are holders for value, and received the note in good faith in the ordinary course of business and without notice of the fraud.   (*Wardell* v. *Howell,* 9 *Wend.* 170.   *Rochester* v. *Taylor,* 23 *Barb.* 18. *Small* v. *Smith,* 1 *Denio,* 583.)   The learned judge at the circuit put the case upon this ground, and the only question for our decision is whether the plaintiff brought himself within the rule defining a bona fide holder of negotiable paper.   The note was transferred as security for the sum of $200, lent by the plaintiff to John McQueen on the same day of the transfer, the same being part of the sum of $500 then loaned. On the discount of the draft for this $500, it appears that a bill of lading and rail road receipt for 105 barrels of flour were delivered to the plaintiff as security for the payment of such draft.   This bill of lading and receipt bound the flour, and was subsequently surrendered by the plaintiff to John McQueen, to enable him to reclaim the flour then on its way to the city of New York, before it reached the hands of the

insolvent consignee.   This was effected by said McQueen, and the flour sent by him to other consignees and the proceeds appropriated to the use of McQueen.   Here a security was surrendered by the plaintiffs, amply sufficient to pay the said sum of $200 for which the note in suit was loaned to, and received by them.   I cannot see why this did not make the plaintiffs bona fide holders of this note, to the extent of the amount remaining unpaid of this sum of $200.   For this amount the judge directed a verdict for the plaintiffs at the circuit.

It is true that the bill of lading was not given up by the plaintiff simultaneously with the delivery of the note, but it was done afterwards, and upon the faith of the security afforded by the note.   The plaintiff testified that McQueen told him, when he applied to get the bill of lading, that "we were secure with the note."   This, I think, brings the case within the rule relating to the transfer of such paper, and constitutes the plaintiffs bona fide holders of the note.   I think the verdict was right, and the judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, September 3, 1860.   *Smith, Johnson* and *Knox,* Justices.]