## The Traders' Bank of Rochester *vs.* Lester Bradner and others.

The payee of a draft, being in possession of it, is presumed to hold it for his own use and benefit, and the draft imports a debt due from the drawees to the drawers, which is assigned to the payee.

The holder of commercial paper, who has received it for an antecedent debt, either as a *security* for payment, or as a *nominal* payment, without parting with any security, property or other thing of legal value, or giving any new consideration, is not a holder for a *valuable* consideration.

If, however, he has paid value for the paper, or, on the credit thereof, has relinquished some available security or valuable right, or has expressly assumed some new legal obligation, he is a holder for value, although the paper is available to him as security for a pre-existing debt.

The plaintiff, being the holder of nine drafts, amounting in the aggregate to $21,000, which it had previously discounted, and which were near maturity, L. the drawer of some of them and the indorser of others, transferred to the plaintiff, as collateral security for the payment of said nine drafts, a draft on L., S. & Co. for $17,000, made by B. & Co., payable subsequently to the maturity of each of the nine drafts to the order of, and indorsed by, L. The plaintiff, in consideration of such transfer, expressly agreed that it would not sue the drawer or drawees, upon either of said nine drafts until the maturity of the draft of B. & Co. thus transferred. *Held* that this agreement for forbearance as to the nine drafts, was a valuable consideration, within the meaning of the rule protecting the holders of negotiable paper; and that the plaintiff was to be regarded as a holder for value, to the full amount of the draft of B. & Co.

A partnership may be indebted to a member of the firm, and may bind itself to him by note or bill. And though the payee can not enforce the obligation at law, by reason of the technical legal rule that a man can not sue himself, yet he may have relief in equity; and his indorsee may recover at law.

THE action is against Lester Bradner and Lewis W. Carroll makers, as copartners under the firm name of Bradner & Carroll, and the other defendants as acceptors, as copartners under the firm name of Lowrey, Strang & Co. of a draft of $17,000, dated February 6, 1862, payable ninety days after date, to the order of D. Lowrey, indorsed by him, accepted by the drawees and discounted by the plaintiff. The defenses by Bradner were, first, the denial of a copartnership of himself and Carroll at the date of the draft; also a denial that they made and delivered the draft, and transferred the same for

a valuable consideration to Daniel Lowrey. Second, that Carroll, without the knowledge, consent or authority of the defendant Bradner, signed the name of Bradner & Carroll upon five pieces of paper, and delivered the same to Daniel Lowrey, authorizing him to write over each of the signatures a draft on Lowrey, Strang & Co.—the five drafts not to exceed $10,000—for the benefit and accommodation of the drawees; that before 'either of the papers were used, Carroll gave notice to Daniel Lowrey that the former had no authority to make the signature, and directed the latter not to use the same; that in March, 1862, Daniel Lowery filled up one of said blanks with the draft in question, and delivered the same to the plaintiff as collateral security for an indebtedness to the plaintiff by Daniel Lowrey, or Lowrey, Strang & Co.; and that the making and delivery of the paper, and transfer of the draft, were without the knowledge, consent or authority of Bradner. The defenses by Carroll were, that about the 21st of March, 1862, at the request of Daniel Lowrey, he signed the name of Bradner & Carroll on five pieces of paper, and delivered the same to Daniel Lowrey, authorizing him to write over each a draft on Lowrey, Strang & Co., the five not to exceed $10,000, for the benefit and accommodation of Peter O. Strang, Goodwin Lowrey and Daniel Lowrey; that after the delivery of said papers to Daniel Lowrey, and before he had filled up or used them, the defendant Carroll gave notice to Daniel Lowrey not to fill up or use them; that afterward, in the said month of March, Daniel Lowrey wrote over one of said papers the draft in question and delivered it to the plaintiff as collateral security for an indebtedness to the plaintiff, of Daniel Lowrey, or Lowrey, Strang & Co., and the defendant Carroll 'denies that Bradner & Carroll made the draft, except as aforesaid, and he denied that the same was transferred for value to Daniel Lowrey.

Daniel Lowrey was a son-in-law of Carroll, and one of the firm of Lowrey, Strang & Co., composed of him and Peter O. Strang and Goodwin Lowrey; that the firm were wool

dealers; that Daniel resided and attended to the business of the firm in Rochester; the other members resided in New York. That about the middle of March, 1862, Daniel Lowrey applied to Carroll, at his house, for some drafts, saying he wanted to raise $10,000 to send to his friends east; that Carroll was about leaving for Bath, and not having time to fill them up and get to the car, he signed the name of Bradner and Carroll to five papers in all, the same being blanks except the signatures, and left them with Daniel Lowrey, who said he would fill them up with $2000 each; that Carroll on his return in the evening saw Daniel Lowrey at Livonia station, and told him he must not use those drafts until Carroll should see him, and he said he would not; that Carroll never gave him authority to use them; that Carroll did not know there was such a draft as the one in question, until informed by the financial officer of the plaintiff that the draft was given for the accommodation of Lowrey, Strang & Co., and for their use. That Carroll made other paper of this character, at the request of Daniel Lowrey, in the winter of 1861–2, and spring of 1862, some filled in part, some signed in blank, as many as twenty; Bradner knew nothing of any of them; he did'nt authorize any of them. Then came times when Lowrey, Strang & Co. suspended, and these drafts began to be protested; Carroll received notice of protest on drafts amounting to $80,000 up to some time in May. Carroll told Daniel Lowery he had no business to sign the name of Bradner & Carroll to the paper. He said it would make no difference, for Lowrey, Strang & Co. would take care of it. Lowrey, Strang & Co. suspended March 28, 1862. Carroll never told Bradner he was using the firm name in their business. That Bradner never authorized Carroll to make that paper; he did not know of it; he never authorized Carroll to sign the name of the firm to blank paper; Bradner & Carroll did not receive any of the avails of that draft, or any benefit from it. Carroll never had any authority from Bradner to use the firm name outside of the co-partnership busi-

.ness. It was further proved that the plaintiff did business
with the firm of Bradner & Carroll, during the existence of
that firm, in discounting their notes presented by Carroll,
and drafts presented by him drawn on Lowrey, Strang &
Co., the last on the 21st of September, 1861; all that paper
was paid at maturity. Daniel Lowrey first commenced doing
business with the plaintiff in the fall of 1861; the plaintiff
knew he belonged to the firm of Lowrey, Strang & Co., and
knew who composed that firm. The draft in suit was
received by the plaintiff of Daniel Lowrey, after the 19th
and before the 24th of March, 1862. At that time the
plaintiff held seven drafts, drawn by Daniel Lowrey on Low-
rey, Strang & Co., amounting to $17,000, and two drawn by
Bradner & Carroll on the same, amounting to $4000, paya-
ble to the order of D. Lowrey. The last two drafts were for
$2000 each, one due the 31st of March, the other the 9th of
May. The former, due the 31st of March, was put in suit,
and was arranged and paid by Daniel Lowrey. The latter,
due the 9th of May, was secured by Daniel Lowrey or Low-
rey, Strang & Co., so that Bradner & Carroll were released
from it. James W. Russell, the financial officer of the
plaintiff, testified that the consideration upon which the
$17,000 draft in suit was received by the plaintiff was the
extension of time upon the *nine* drafts held by the plaintiff,
until the draft in suit should mature; that he regarded that
draft as collateral paper, and kept it with the collateral
paper; that the plaintiff took the draft in suit as collat-
eral to balances of the *seven* drafts, in the place of these
drafts, and agreed to extend the time on them. The
arrangement was that Daniel Lowrey, or Lowrey, Strang &
Co., should not be sued on these drafts; that he did not
advance any money to Lowrey, or any one, at the time he
received the draft in suit. That, in the conversation with
Lowrey, the only arrangement was that the drafts should·
not be sued. The draft was received in consideration of
extending the time of payment of the draft as to Lowrey,

Strang & Co., and not as to Bradner & Carroll.   It was further proved that the filling up of the draft in suit, and the acceptance, are in Daniel Lowrey's handwriting.   Whether it was accepted when received by the plaintiff, the witness Russell testified he did not know.   Several decisions adverse to the defendants, on questions of evidence, were made in the progress of the trial, to which exceptions were taken by the defendants.   The facts in relation to the exceptions, so far as it is deemed important to refer to them particularly, appear in the points.   At the close of the evidence the defendants moved for a nonsuit on several grounds.   The court denied the motion, and the defendants excepted.   The court directed a verdict for the plaintiff, to which the defendants excepted.   Exceptions directed to be argued in the first instance at the general term.

*Geo. F. Danforth,* for the plaintiff.   I. The decision of the court was correct.   The agreement to give time upon the drafts held by the plaintiffs was a present and valuable consideration, as much so as the actual payment of money. (1.) It operated like a new loan of the sums represented by the drafts, for the time which should intervene between their maturity and the maturity of the one in question.   (2.) It prevented any measures by action for the recovery of the money.   (3.) It was a benefit to Lowrey, the transferrer, and a detriment to the plaintiff.   (4.) Its sufficiency to uphold the title in the plaintiff is determined by authority. (*Waters* v. *Glassop,* 1 *Ld. Raym.* 357.   *Yard* v. *Gland, Id.* 368.   *Com. Dig. Assumpsit,* [B. 1,] [B. 2.]   *Jennison* v. *Stafford,* 1 *Cush.* 168.   1 *Parsons on Bills,* 224.   *Burns* v. *Rowland,* 40 *Barb.* 368, 374.   *Story on Notes,* § 186. 10 *Ohio Rep.* 497.   33 *Barb.* 458, 465, 621.)   The above position is entirely consistent with the cases of *Coddington* v. *Bay,* (20 *John.* 637, and *Stalker* v. *McDonald,* (6 *Hill,* 113.)   So in *Prentiss* v. *Graves,* (33 *Barb.* 621,) a note had been made for the purpose of paying a certain draft held

by the plaintiffs ; the note was delivered to the plaintiff, who received it, not in payment, but as security. . They after-wards sued the note, and a defense similar to that in this case was set up and sustained ; Campbell, J. saying, (*p.* 624,) "the plaintiffs gave no new consideration, nor parted with any property, nor gave up any other security, *or agreed to extend the time of payment of the draft."* In .*Burns* v. *Rowland,* (40 *Barb.* 368,) to an action on a draft a defense similar in principle was set up. But the court say : "It appears, however, that the debt of Hussey (the transferrer) to the plaintiff was due, and the plaintiff before taking the draft had a right to enforce its payment presently. By receiving the draft he relinquished this right, and his power to collect the debt from Hussey was suspended until the draft should mature. *This was a sufficient and valuable consideration."* And the plaintiff had judgment. In *Mechanics' Bank* v. *Livingston,* (33 *Barb.* 458, 465,) the court, (*p.* 465,) say : "By accepting the draft the bank is postponed, and a forbearance is necessarily granted, *which is a sufficient consideration* for the acceptances."* It is submitted that the plaintiff's case is well within the principle of the rule which protects the holder of commercial paper, and is sustained by the settled law of the courts of this state.

II. Many other points involved in the motion for a non-suit, and suggested by the grounds on which it was made, were urged upon the trial, by the defendant. If urged upon this motion, the respondent insists that they are of no valid-ity. 1. The defendant did not desire the submission of any question to the jury, and, therefore, every fact essential to sup-port the plaintiff's case, which the jury would be warranted to draw from the evidence, must be deemed established, and the case treated as if the jury had found those facts, and the judge had applied to them the rule of law. (*Bidwell* v. *Lament,* 17 *How. Pr. Rep.* 357.) But if the court hold otherwise, then, 2. The plaintiff had no notice that the draft was drawn for the accommodation of D. Lowrey. 3. Although

the plaintiff did know that Lowrey was a member of the firm of Lowrey, Strang & Co., neither it alone, nor it in connection with the fact that D. Lowrey is named as payee in the note, and he was in possession of it, is sufficient in any way to affect the plaintiff's title. (*a.*) The payee of a draft is the person who should be in possession of it. (*b.*) The draft implies that Lowrey, Strang & Co. owe Bradner & Carroll, and that the latter desire the amount paid to D. Lowrey or his order. Such a state of facts would not even be unusual. In this case it even appeared that Lowrey was carrying on in Rochester the business of buying sheepskins, on his individual account and under his individual name, and that this was known to the plaintiff. (*c.*) It is true that D. Lowrey could not sue the acceptors, but that is because of a technical rule of law only, which prevents the same person from being plaintiff and defendant in one suit. He could, however, sue the drawers, and his indorsee could sue both the drawers and acceptors. (*Temple* v. *Seaver,* 11 *Cush.* 314. *Thayer* v. *Buffum*, 11 *Metc.* 398. *Pitcher* v. *Barrows*, 17 *Pick.* 361. *Smith* v. *Lusher*, 5 *Cowen*, 688. *Johnson* v. *Negley*, 25 *Penn. Rep.* 297.) (*d.*) The case is in no respect like the cases referred to in behalf of the appellant. In those the note in question was found in the hands of the maker after indorsement, or the draft in the hands of the drawer after acceptance—a state of things out of the ordinary course of business—and the defense was interposed by the indorser or acceptor; while here the only person who should have the draft is the payee, who does have it, and does assume to transfer it.

III. If the foregoing positions are correct, viz., 1. That the plaintiff is an innocent holder; 2. That it became such for a valuable consideration; the firm of Bradner & Carroll, and each member of it, is bound. It is doubtless true that the execution of the draft in question by Carroll, without the consent of his co-partner, for the accommodation of Lowrey,

would be inoperative to uphold it against the firm while in the hands of Lowrey. But it is equally true, and as well settled as any principle or rule of law, that if a co-partner of a mercantile firm affixes the partnership name to paper in which the firm has no interest, and such paper is negotiated to an innocent holder for a valuable consideration, the firm is bound. (*Bank of Genesee* v. *Patchin Bank,* 13 *N. Y. R.* 315. *Gansevoort* v. *Williams,* 14 *Wend.* 133. *Catskill Bank* v. *Stall,* 15 *id.* 364. *Evans* v. *Wells,* 22 *id.* 524, *Walworth, Ch. p.* 333.)

*T. R. Strong,* for the defendants. I. The signature of Bradner & Carroll on five pieces of blank paper, was given by Carroll to Daniel Lowrey, one of the firm of Lowrey, Strang & Co., under an arrangement between Carroll and Daniel Lowrey that they might be filled up as drafts for $2000 each — the whole not to exceed $10,000 — and on one of those pieces of paper is the draft in question. The signature was lent for the accommodation of Lowrey, Strang & Co., and for their use.

II. Before the draft in question was filled up or used, Carroll gave notice to Daniel Lowrey that he must not use the same, and he promised not to do so; and Carroll never afterwards gave him authority to use it. The filling up and use of the draft was therefore without the authority, and contrary to the directions of Carroll, and in violation of the promise of Daniel Lowrey to Carroll not to use it; hence the filling up and use was a forgery. It was also a forgery because it was filled up and used for $17,000, when by the arrangement it was to be for a less sum. (*Van Duzer* v. *Howe,* 21 *N. Y. Rep.* 531.) It is manifest from the testimony of Russell, the financial officer of the plaintiff, that the blank was not filled until at or about the time the plaintiff received it. It was filled up to correspond in amount with the seven drafts the plaintiff then held of Daniel Lowrey or Lowrey, Strang & Co., and evidently for the purpose

of collateral security for those drafts, in pursuance of an arrangement then made. The time of its receipt was between the 19th and 29th of March, 1862. The signatures were given by Carroll about the middle of March.

III. The signature was given by Carroll for the purpose aforesaid, the blank was filled, and the draft issued by Daniel Lowrey, without the knowledge or authority of Bradner; and he never assented thereto. This was not only out of the scope of the partnership business in which Bradner & Carroll had been engaged, but it was after the dissolution of the partnership, and after notice to Daniel Lowrey of the dissolution; hence Bradner is not liable on the draft unless the plaintiff is a bona fide holder. Carroll could not, without the consent of Bradner, impose a liability on Bradner & Carroll, as sureties for Lowrey, Strang & Co., even during the partnership, much less after the dissolution. In *Laverty* v. *Burr*, (1 *Wend.* 529,) Burr indorsed the firm name of Burr & Baldwin upon Allen's note, given to the plaintiff for a debt of Allen. The court say, "The partner who did not sign the note is not bound by it under such circumstances unless he was previously consulted and assented to the transaction; and the burden of proving that the partner who did not sign the note, consented to be bound, is thrown on the creditor. (*See also Gansevoort* v. *Williams*, 14 *Wend.* 139; *Wilson* v. *Williams, Id.* 156; *Joyce* v. *Williams, Id.* 141; *Stall* v. *Catskill Bank*, 18 *id.* 469; *see further authorities cited under next point.*)

IV. The plaintiff is not a bona fide holder of the draft so as to preclude the defendants Bradner & Carroll from setting up against it their respective defenses against any claim upon the draft, or in respect to it, by Daniel Lowrey, or Lowrey, Strang & Co. 1. The plaintiff received the draft from Daniel Lowrey, knowing at the time the fact that he was a member of the firm of Lowrey, Strang & Co. He is payee, and one of the drawers and acceptors, and himself wrote the acceptance in the name of that firm. This charges the plain-

tiff with notice that the draft was made for the accommoda-
tion of Lowrey, Strang & Co. ; that Bradner & Carroll were
mere sureties for that firm, and imposes upon the plaintiff
the burden of proving the assent of Bradner to such use of
the firm name. (*Bank of Rochester* v. *Bowen,* 7 *Wend.* 158.)
Bowen procured the indorsement of Aldrich & Searle upon
his note, the indorsement being made by Aldrich ; Bowen
procured the note to be discounted by the plaintiff for his
own benefit. Held, that presenting the note for discount by
the maker, was notice to the bank that Aldrich & Searle
were accommodation indorsers, and that Searle was not liable
without proof of his assent. (*Brown* v. *Taber,* 5 *Wend.*
566.) The drawee had possession of the note ; this fact
warranted the inference that the defendant's indorsement was
for his accommodation. (*See also Boyd* v. *Plumb,* 7 *Wend.*
309 ; *Livingston* v. *Roosevelt,* 4 *John.* 272 ; *The Bank of
Vergennes* v. *Cameron,* 7 *Barb.* 143, 150.) In the case of
*Stall* v. *Catskill Bank,* (18 *Wend.* 469,) the court holds
this language : "If the drawer of a note carries it to the
bank to get it discounted on his own account, or transfers
it to a third person with the name of a firm indorsed thereon,
the transaction on its face shows it is a mere accommodation
indorsement, or the note would not be in the hands of the
drawer ; and the bank or person who receives it from the
drawer, being thus chargeable with notice that the firm are
mere sureties of the drawer, and that it has not passed
through their hands in the ordinary course of partnership
business, the members of the firm who have been made
sureties without their consent are not liable to such holder
of the note." Daniel Lowrey could not maintain an action
at law to enforce the draft. He is, upon its face, both debtor
and creditor. For the same reasons the plaintiff is charge-
able with notice that the firm of Bradner & Carroll had
been dissolved before the making of. the draft, and of the
facts stated in the second point ; and the burden is imposed
upon the plaintiff of avoiding their force. The acts of Dan-

iel Lowrey, in his transactions with the plaintiff, are not, nor would even his express declarations be evidence to affect the rights of Bradner or the position of the plaintiff in regard to him. (*Gansevoort* v. *Williams*, 14 *Wend.* 135. *Elliott* v. *Dudley*, 19 *Barb.* 326.) The cases cited are directly in point to this position. 2. The plaintiff received the draft as collateral security to a prior indebtedness of Daniel Lowrey and Lowrey, Strang & Co. It is submitted that it is apparent from the testimony of Mr. Russell that this was in substance and effect the transaction, and the whole of it. No money was paid, or value parted with. Receiving the draft as security was not a parting with value. (*Coddington* v. *Bay*, 20 *John.* 637. *Stalker* v. *McDonald*, 6 *Hill*, 93. *Youngs* v. *Lee*, 2 *Kern.* 551.) 3. Assuming that the draft was received by the plaintiff under an arrangement to give time upon the other drafts held by the plaintiff, until the former should mature, it does not constitute that valuable consideration which the law required, to make the plaintiff a bona fide holder. The seven drafts unsatisfied, then held by the plaintiff, were to mature from the 12th of April to the 4th of May; the draft in question was payable in ninety days from February 6, and would mature the 10th of May. Less than a month's time was to be given upon either of the prior drafts; and there is no evidence or suggestion that any prejudice has resulted to the plaintiff from giving time. A holder can claim protection from the defense of a party to his negotiable paper as against other parties only when he has parted with some value, or suffered some injury on the faith of it. When he will lose no right which he had when he obtained the paper, and will be fully reinstated if he fails to recover, he is not a holder for value, and the equities of the maker will be preferred. (*Cardwell* v. *Hicks*, 37 *Barb.* 458.) Here no value has been parted with, no injury suffered. In *Wardell* v. *Howell*, (9 *Wend.* 170,) a note at three months was transferred to apply, *when paid*, on a precedent debt, in consideration of the creditor's stop-

ping a suit for that debt, the debtor paying the costs. It was decided that the holder of the note was not a holder for value. The court say the discontinuing of the suit, and the prior indebtedness, were a good consideration for the transfer of the note, but that they did not "constitute that valuable consideration which the policy of the law requires" to make a party a bona fide holder. (*See Francia* v. *Joseph*, 3 *Edw. V. Ch. Rep.* 182, 184.) In *Wardell* v. *Howell*, there was an implied agreement to give time on the debt then due, during the running of the note in question, which was three months. The case seems to be decisive of the present. (26 *N. Y. Rep.* 450.)

V. When money or value is paid in good faith, in the usual course of business, for negotiable paper, the holding is bona fide only to the extent of the money or value paid. (*Ayrault* v. *McQueen*, 32 *Barb.* 305. *Youngs* v. *Lee*, 2 *Kern.* 551. *Edwards* v. *Jones*, 7 *C. & P.* 633. *Edw. on Bills*, 373, *n.*) Upon the same principle, if in this case the plaintiff could be a bona fide holder for value by reason of the facts proved, he could be so only to the amount of the loss which he would sustain by restoring him to his original position. And it can not be seen that any loss would accrue to him. There is no good reason for preferring the plaintiff to the equities of the defendants, to a greater extent. The burden was upon the plaintiff to show that he would be prejudiced by giving the equities of the maker priority; also in view of the circumstances of the making of the draft by Daniel Lowrey, that it is a bona fide holder. (*Case* v. *Mechanics' Banking Association*, 4 *N. Y. Rep.* 166.)

*By the Court,* JAMES C. SMITH, J. It appears from the evidence that the plaintiff received the draft in suit from Lowrey, the payee, knowing at the time that he was a member of the firm of Lowrey, Strang & Co., the drawees and acceptors. The defendants insist that these facts charge the plaintiff with notice that the draft was made for the accommodation of

Lowrey, Strang & Co., and 'that Bradner & Carroll, the drawers, were mere sureties for that firm, and impose upon the plaintiff the burden of proving the assent of Bradner to such use of the firm name. I think this position can not be maintained. The payee, being in possession of the draft, is presumed to hold it for his own use and benefit, and the draft, like other ordinary bills of exchange, imports a debt due from the drawees to the drawers, which is assigned to the payee. It is true that Lowrey, the payee, could not maintain an action at law against the acceptors, Lowrey, Strang & Co., of which firm he was a member, but that is only by reason of the technical legal rule that a man can not sue himself. (2 *Bos. & Pul.* 120.) There can be no doubt that a partnership may be indebted to one of the firm, and may bind themselves to him by note or bill; and that though the payee can not enforce the obligation at law, yet he may have relief in equity, (1 *Story's Eq. Jur.* §§ 679 *to* 682,) and his indorsee may recover at law. (*Smith* v. *Lusher,* 5 *Cowen,* 688. *Temple* v. *Seaver,* 11 *Cush.* 314.) The authorities cited by the defendants' counsel upon this branch of the case do not sustain his position.

A question of more difficulty and importance is, whether the plaintiff is a holder for *value.* At the time when the bank received the draft in suit, which was between the 19th and 29th days of March, it held nine other drafts, previously discounted by it, seven of which, amounting to $17,000 were drawn by Lowrey, on Lowrey, Strang & Co., and accepted by them, and the other two, amounting to $4000, were drawn by Bradner & Carroll, on Lowrey, Strang & Co., to the order of Lowrey, and accepted by the drawees. Of these nine drafts, one was to mature on the 29th of March, one on the 9th of May, and the others on different days between those dates. The draft in suit was transferred to the plaintiff as collateral security for the payment of the nine drafts above mentioned, and the plaintiff, in consideration of such transfer, expressly agreed that it would not sue Lowrey,

or Lowrey, Strang & Co., upon either of said drafts, until the maturity of the draft thus transferred. The judge, at the circuit, held that this agreement for forbearance was a valuable consideration within the meaning of the rule protecting the holder of negotiable paper; and I am of opinion the decision is correct. It is insisted by the defendants, that as the plaintiff received the draft as collateral security to a pre-existing debt, it is not a holder for value according to the law as settled by the adjudications of the courts of this state. As I understand the numerous reported cases bearing upon this question, they establish the following propositions: (1.) The holder of commercial paper, who has received it for an antecedent debt, either as a *security* for payment, or as a *nominal* payment, without parting with any security, property or other thing of legal value, or giving any new consideration, is not a holder for a *valuable* consideration. (*Coddington* v. *Bay*, 20 *John.* 637. *Stalker* v. *McDonald*, 6 *Hill*, 93. *Farrington* v. *Frankfort Bank*, 24 *Barb.* 554.) (2.) If, however, he has paid value for the paper, or on the credit thereof has relinquished some available security or valuable right, or has expressly assumed some new legal obligation, he is a holder for value, although the paper is available to him as security for a pre-existing debt. (*Bank of Salina* v. *Babcock*, 21 *Wend.* 499. *Bank of St. Albans* v. *Gilliland*, 23 *id.* 311. *Bank of Sandusky* v. *Scoville*, 24 *id.* 115. *Mohawk Bank* v. *Corey*, 1 *Hill*, 513. *Youngs* v. *Lee*, 18 *Barb.* 187. *S. C. affirmed*, 2 *Kern.* 551. *White* v. *Springfield Bank*, 3 *Sandf. S. C. R.* 222. *Meads* v. *The Merchants' Bank*, 25 *N. Y. Rep.* 143.) Tested by these rules, the agreement of the plaintiff to give time upon the drafts held by it was clearly a valuable consideration. Not only was it a *valid* consideration to support the transfer, but *it* created a new equity between the original parties, and as it suspended the legal remedy of the plaintiff, the latter could not be restored to as good condition as it was in before the transfer. It operated like a new loan of the sums due upon

the drafts, until the maturity of the new security. The trans-action was substantially the same as if the old drafts, to the amount of $17,000, had been paid and canceled, and the sum paid had been loaned upon the new draft. Although the plaintiff did not give up the old drafts, it parted with its right of action upon them until the maturity of the new one; and assumed the risk of loss by the insolvency of Lowrey and his firm, in the meantime. And if the agreement to give time included the drafts drawn by Bradner & Carroll, they were thereby released from their obligation upon such drafts, as, on the face of the paper, they were sureties for the acceptors, and it does not appear that they consented to the extension.

The defendants' counsel cites *Wardell* v. *Howell*, (9 *Wend.* 170,) and *Francia* v. *Joseph*, (3 *Edw.* 182,) as authorities for the position that the agreement to give time does not con-stitute a *valuable* consideration. But I think they are not decisive of the question. In *Wardell* v. *Howell*, the plain-tiffs had sued one Hughes on a note for $178. Hughes offered the plaintiffs that if they would stop the suit, he would pay the costs, and turn out a note in his possession indorsed by the defendants, for $150, as collateral security for the note they held against him. The plaintiffs acceded to his proposition; he paid the costs and delivered the note in question to them, and they gave him a receipt acknowl-edging that they had received the note, which, *when paid*, was to apply on their note against him. There was no express agreement to extend the time of payment; and none could be presumed, as the agreement was merely that the note should take effect as *security*. (11 *Wend.* 320. 1 *Bosw.* 411.) It would have been otherwise, perhaps, if the parties had intended the note to operate as a conditional *payment*, at the time *of the transfer;* (5 *Hill*, 463; 3 *Denio*, 512; 2 *Am. L. Cas.* 420;) but, by the terms of the receipt, it was not to be applied until paid. This view of the case was undoubtedly taken by the court. Justice Sutherland, deliv-

Traders' Bank of Rochester *v*. Bradner.

ering the opinion, said that the prior indebtedness of Hughes, and the discontinuing the suit against him, did not constitute a *valuable* consideration against the indorser, under the circumstances of the case. But he did not suggest that there was an agreement to extend the time, express or implied; nor is there an allusion in the case to the effect of such an agreement by way of constituting a valuable consideration in the sense of the commercial rule. The case of *Francia* v. *Joseph* was decided by Vice Chancellor McCoun, so far as this point is concerned, mainly upon a misapprehension, as I conceive, of the ruling in *Wardell* v. *Howell*. The decision is entitled to great respect, but as it stands alone, and is not binding upon this court at general term, we may properly consider the question as an open one.

The plaintiff is to be regarded as a holder for value to the full amount of the draft in suit. As has already been observed, it assumed by its agreement the risk of loss by reason of all the parties to the drafts becoming insolvent during the period for which the credit was extended. If such insolvency had occurred, the bank would be regarded as having paid the full amount of the draft. The result is the same if the transaction is treated as a payment of $17,000 upon the original drafts, and a loan of that amount upon the draft in suit.

I am of opinion the motion for a new trial should be denied.

Ordered accordingly.

[Monroe General Term, December 5, 1864. *J. C. Smith, Welles* and *E. D. Smith*, Justices.