H. T. Ellett, Special Judge,
delivered the opinion of the Court.
Hardin sued Overton as indorser of a note made by W. A. Blythe, payable to, and indorsed by Over-ton, dated June 1, 1860, for $1,490, payable twelve months after date.
On the trial, the defendant proved that the note, indorsed as aforesaid, was sold by the maker to the plaintiff, in the latter part of March, 1861, before maturity, for twenty-two bales of cotton, which were sold at the same time by Blythe, for $771, and that the plaintiff was a professional note shaver.
It was also proved, that Overton was a man of large fortune, and first rate credit, and that the note of Blythe, having three or four months to run, could have been readily discounted in bank, in Memphis, if it was all right, at the usual banking rates.
It was also proved that one Johnson held a note of Blythe for $5,555, due in 1858, on which Overton and three others were bound as sureties; and that about the 1st of June, I860, Blythe proposed to take it up, by giving Johnson four new notes, each indorsed by one of the said sureties; that he forwarded these notes to Johnson, in North Carolina, who declined to take them; and that Overton’s was on one of the four notes so sent.
Two letters of Blythe to Overton were read in evidence by defendant. In the first, which is dated June 13, 1860, he explains the arrangement with Johnson to take up the large note by giving smaller ones, each *377 to be signed by one of tbe sureties on tbe original paper, and encloses one of the new notes for Overton’s signature.
Tbe other letter, dated August 20, 1860, returns this note to Overton, and encloses another for him to indorse, saying that Johnson requests that the notes be indorsed instead of being signed by the sureties on their face. It also states, that the time of maturity is changed from six to twelve months, and interest included for the additional six months.
The note thus returned, was a note dated June 1, 1860, for $1,433, payable six months after date, signed by Blythe and Overton, and payable to Johnson.
The defendant proved that Blythe died in February, 1865; and further, offered to prove, that, after he sold the note to plaintiff, and before its maturity, Blythe declared to a witness, that Overton was an accommodation indorser for him on the note in question; that the note was made to enable him to take up the Johnson note, and that he had no right to use it for any other purpose, but that he had misapplied it, and let Hardin have it.
Evidence of these declarations was objected to by the plaintiff, and was excluded by the Court.
There can be no doubt that the possession of. an indorsed note by the maker, is presumptive evidence that it was indorsed for his accommodation: Edwards on Bills, 317, 318, and notes; Brown vs. Taber, 5 Wend., 566; Erwin vs. Shaffer, 8 Ohio State R., 43.
It is equally clear, that an accommodation note is invalid in the hands of the person for whose benefit it *378 was made; and, tbat if it be sold or discounted by him at a greater loss tban legal interest, sucli transaction is usurious and unlawful: Edwards on Bills, 352, 372; Chitty on Con., 611; 3 Parsons Con., 145; 2 Yerger, 464; 2 Hum., 102, 546; 4 Hum., 244; 7 Hum., 450; 15 Johns., 55; 3 Campb., 119.
Then, when Hardin purchased the note in question from Blythe, he not only had notice that Overton was an accommodation indorser, but he actually purchased it' for an unlawful and usurious consideration. The most hackneyed device to conceal the nature of a usurious transaction, is, to give it the form of a sale of property, which the borrower takes at an exhorbitant price. The simultaneous sale of the cotton received by Blythe from the plaintiff, at a price- but little exceeding one half the face of the note, leaves no doubt as to the character of this transaction. In this view of the case alone, it is difficult to see how the plaintiff could have recovered more than the value of the. cotton with interest.
But the purchase of a note, under the circumstances detailed, is not a purchase in due course of trade, and cannot invest the plaintiff with the rights of a bona fide holder; but he takes it, subject to all the equities existing against it.
These equities, in the present case, are of the most decided and indisputable character, and they were clearly made out by the testimony .that was admitted to go to the jury on the trial.
The testimony of Johnson — the letters of Blythe to Overton — and the first note for $1,433, signed by Over-ton, and returned to him, to be replaced by the note *379 sued on; all which were legal evidence, as parts of the res gestee, or as declarations of Blythe, before he parted with the note; disparaging his own title and his right to dispose of it, fully show that the note sued on was made to be used for a specific purpose, to-wit: in taking up the large note held by Johnson, on which Overton was a surety, and that it was fraudulently misappropriated by Blythe, when he sold it to the plaintiff. These facts constituted a full and complete defense to the action. The only possible ground of cavil was on the question, whether this note is the identical note enclosed by Blythe to Overton, in his letter of August 20, 1860, to be indorsed and returned. But on this point there can remain no doubt, after comparing this note with the one first signed by Over-ton, and sent back to him in the same letter, and recurring to the alterations and changes indicated in the letter itself.
These clearly show that the note must have been one dated Memphis, June 1, i860, for about the sum of $1,490, signed by Blythe, and payable to, and indorsed by Overton. If there was another note of the same description besides the one thus made to take up the Johnson note, the- plaintiff ought to have given some evidence of it. Uncontradicted, the evidence admitted of but one conclusion.
On both the points referred to, we think the Court erred in not granting a new trial.
The declarations of Blythe, made to "Waddell after the delivery of the note to the plaintiff, which were offered to be proved, and were excluded by the Court, *380 were not admissible upon the same principle applicable to the written declarations made before the transfer. But it seems to be well settled, that the declarations of a party having competent knowledge of the facts, and at variance with his own interest, are admissible after the death of the declarant as original evidence, without reference to the time when they were made, or to the question whether the party, if alive, would be a competent witness or not. Such are admitted on the ground of their intrinsic credibility, and the extreme improbability that a party under such circumstances, would state anything but the truth: 1 Greenl. Ev., sections 147, 148, 152 and 153.
This rule is not regarded as inconsistent with that which excludes, ordinarily, the admissions of a stranger not a party to the record, or identified in interest with him; nor with that which rejects the declarations of a vendor or assignee, made after parting with the property, in disparagement of the title. It rests on the other considerations already stated, and constitutes an established exception to the general principle by which hearsay evidence is held to be incompetent. The adverse interest of the declarant at the time, is considered a sufficient guaranty of the truth of his statement; and his subsequent death as an adequate safeguard against frauds.
Were the admissions of Blythe, offered in evidence by the defendant, against his interest at the time they were made?
He was the maker, and Overton the indorser, of the note. In any event, his liability to the holder *381 for tlie principal and interest, was the same. Bnt it was different as to the costs.
An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense.
An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335.
These declarations went to the point that Overton was. an accommodation indorser for Blythe, and that there existed reasonable grounds for resisting the efforts of the plaintiff to enforce his liability as such.
Their effect was to render Blythe liable to Overton for the costs of this suit, if the defense should be unsuccessful; when otherwise, he might not have been subject to any such obligation.
The interest was small, it is true, and, under present circumstances, the liability may practically amount to nothing. But the degree of interest is not material ; and when these declarations were made, the obligation assumed was substantial.
Looking to their character at that date, they were at variance with the interest of Blythe, and, under the rule of evidence stated, it was error to exclude them from the jury.
The judgment will be reversed, the verdict set aside, and the cause remanded for a new trial in the Courts below.