Mr. Chief Justice Shakkey
delivered the opinion of the court.'
This action was brought in the circuit court of Adams county by Minor and wife, to recover the amount of a physician’s bill due Benjamin M. Bullen in his lifetime, the wife being the executrix. The account was created and due in the year 1820. The defendant below pleaded non assumpsit and the statute of limitations in two different forms; first, the statute of two years, and secondly, the statute of six years; and averred in his pleas, that the cause of action was barred prior to the repeal of the statute, which occurred in 1827. The suit was brought in 1828. To these pleas the plaintiffs demurred, which was sustained by the court, and the appeal taken to this court.
*187 The only question that we are called on to decide is, Does the repeal of the statute of limitations revive a cause of action which had been barred by it before the repeal?
This question is perplexing in its character, and I have not been able to find any authority directly in point that would establish the rule of decision in relation to debts either in the authorities of England or the United States, for the reason I suppose, that no state except our own has been so imprudent as to meddle with the statute of limitations without providing ample guards for all contingencies and difficulties that might result. It is true there are many authorities that seem to me to have a direct bearing on the principles that are involved as I understand them, and from these, having in view the rules for the construction of statutes, I have formed my opinion.
The statute of limitation as it is found in the Revised Code, seems to have been passed in 1822, but in truth the fourth section of that act has been the law ever since 1802. The legislature directed what laws of a general nature should be incorporated in the code, and the revisor merely transferred this law in pursuance of the direction. Subsequently all laws of a general nature that were not incorporated in the revision were repealed, but the section alluded to having been carried into the Revised Code, was not affected by that repeal, and remained uninterruptedly the law of the land until 1827. I mention this because if this section had its origin in 1822, six years had not elapsed when it was repealed, and this would impose on us the necessity of deciding whether a limitation can be pleaded to claims existing before its passage and before it has run the time prescribed — a question not involved in this case.
The eleventh section prescribes a limitation of two years for certain claims specified, and the defendant has pleaded both the fourth and eleventh, as if doubting which particular section would cover the claim set up. It is wholly immaterial to which class the claim belongs. If it be such as required six years to bar it, I have shown that the fourth section of the act was in operation from 1802 until 1827, and the debt being created in 1820, was liable to the operation of this provision until the repeal in 1827, a period of more than six years. If the claim belong to that class men *188 tioned in the eleventh section, it is immaterial whether that section existed prior to 1822, or not, as it had run more than two years on the claim before the repeal. In either event the situation of the demand is precisely the same in principle, as if either of the pleas be good, it is sufficient to answer the purpose. The legislature, in the repealing act of 1827, did not manifest an intention to abolish a limitation entirely; but in the same section ■ which repeals the fourth of the act, a new rule is substituted, to wit: three years in place of six, as to all causes of action, except promissory notes; and in repealing the eleventh section, which prescribes two years, three is substituted, both expressed to be in lieu of the former time.
By a numerous train of decisions, it is held that the statute of limitations operates on and affects the remedy merely, and is not to extend its influence to the construction of the contract, or what is called the right. Without pretending to question the truth of this position, I think the effect, or operation, and the remedy, may clothe a party with a defence, or a right to set up a resistance,' which cannot be taken from him without his consent. If a party be deprived of his remedy, in what does his right consist? Whatever the rule may be in morals, in a purely legal point of view, I think it is difficult to imagine the existence of a right without some adequate remedy. It is a maxim, that there is no right without a corresponding remedy; by which I understand that they are dependent terms; that one cannot exist without the other; that the idea of a right is predicated on, and necessarily carries with it, as essential to its existence, the means also of enforcing it; and the moment the remedy is destroyed, the right must go with it.. It is true, that the remedy may be suspended by the force of circumstances over which the party has no control, and in which he does not act. If it be true, that the remedy is a constituent part of a right, and they cannot exist separately, must it not follow that whatever destroys the one must destroy the other? If the statute of limitations should only operate as a suspension of the remedy, and not as a total destruction of it, the result would be the same, as that suspension is the consequence of the acts of the claimant, and it is a rule well settled, that a remedy, suspended by the act of the party, entitled to it, is forever gone.
*189 The holding up of the claim until the statute had run, was the act of the party, and by it he has lost his remedy, and at the same time a good defence was vested in the opposite party. If the application be made to the present case, can it be true that the statute of limitations destroyed the remedy of the plaintiffs below, but left the right undisturbed, to take effect on the happening of a contingency in which the defendant had no agency? To my mind it is clear that the moment the remedy was gone, by the running of the statute, the right was gone also, and a right to set this lapse of time up as a defence vested in the opposite party, and he could not be deprived of the privilege without his consent by subsequent legislation. This must be the rule if a defence may form the subject of a right, and that it may seems to me to be clear. Defences, like causes of action, are of various kinds, arising by operation of law, predicated on some act or supposed act of the parties, or by connection or agreement between them, and in either case must be equally operative. A bar created by the statute of limitation's, is as effectual as a payment; and a defendant cannot be deprived of the benefit of such payment, nor of the evidence to support it; and having provided himself with evidence sufficient and legal at the time of payment, no law can change the nature, or destroy the sufficiency of the evidence. In this case, where the statute had run, the defendant had a right to make the defence, and to establish it by the date of the account itself, or by other evidence. Suppose this suit had been instituted before the repeal of the law, and the plea put in, but no trial had taken place, could the legislature deprive the defend,ant of the benefit of that plea, which was good when pleaded? I think not; and yet such would be the result if the statute is to be construed as reviving claims. In Virginia, five years’ possession vests a good title to negroes; and although it is a general rule that the statute of limitations of one state cannot be pleaded in another, yet the supreme court of the United States in the case of Shelby v. Grey, 11 Wheaton, 361, decided that a title thus acquired in Virginia, could be set up in Tennessee. The court evidently proceed on the ground that a good title was vested in Virginia, and being complete there, was not divested by removal. The case of Newly’s Administrator v. Blakely, 3 Hen- *190 ning and Munford, is stronger still. There it was held, that the five years’ possession would not only protect the party, but entitle him to recover-in detinue, and that against the person who was originally entitled to the possession. I am not aware that the statute of Virginia is materially different from our own. It is called a statute of limitations, and I think it entirely probable that it is very similar to the statute of this state. Great similarity may be observed in the statutes of all the states on this subject, in consequence of their following as nearly as possible the English, statute of 21 James I, chapter 16. Negroes, to be sure, are personal property, and may be the subject of title, and from this may arise the variation in the rule referred to, that the limitation act of one state cannot be pleaded elsewhere. The repeal of the statute could have no better effect in regard to a debt, than a peaceable possession of a negro by the party originally entitled to it, who had lost his right by limitation; and yet in the last case cited, such possession was held insufficient to protect the possessor against a title acquired by five years’ possession. Suppose the legislature of Virginia had repealed the statute of limitations after a title to negroes had accrued by five years’ possession; according to the two authorities cited the repeal would not have interrupted the title; for in one case the defendant had moved out of the state, and in the other, the person originally entitled to possession had acquired it.
It is reasonable and just, and, indeed, altogether important, that some period of time by legislative enactment should be fixed, beyond which debts and property cannot be recovered; otherwise the debtors or owners would never be free from liability to useless litigation, and courts of jurtice would be thronged with suitors, seeking, either ignorantly or fraudulently, to possess themselves of that which in justice they should not claim to recover. The ancestor could not leave his posterity secure in their inheritance, however long he might have possessed it, without leaving a complete chain of title, so perfect in itself as to defy the attacks of artifice and avarice. Such a provision, imperfect to be sure, is to be found in the common law, and has been adopted, with slight variation as to the required time, by every state in the Union. The odium which was once attached to defences under this pro *191 vision has worn off, and the statute is now properly construed, like all other statutes of general utility, so as to effect the intention of the legislature. 11 Wheaton, 310; 3 Peters, 278. The intention .of the legislature was evidently to bar claims after a certain time, not by interfering with the origin of the demand, but by interposing a barrier equally as fatal to the right as though it had been void in the inception. Judge Haywood, in the case of Barton’s Lessee v. Shall, Peck’s Reports, 215, says that “the act of limitations is a law of presumptions; it presumes evidence from length of time which cannot now be produced; payment which cannot now be proved; deeds which cannot now be found; releases which cannot now be shown.” ' In the same opinion he says, “ the act should be so construed as not to defeat the presumption which it is intended to establish.” In this case the presumptions arising from, and necessarily attached to, the act of the plaintiff, had actually accrued at the expiration of the required time, arming the defendant with a right to set them up in his defence, and creating a given state of facts forming a good bar to the remedy, and a consequent destruction to the right.
Having shown that the act of limitations is to be construed as other acts of the legislature, with a view to effect the intention and the object, I will notice the retrospective operation which the act of 1827 must necessarily have, if claims once barred are revived by it; and, how far such an effect may be given to a statute, will enter into the inquiry. To say that it revived all claims of a particular class is certainly giving to it a retrospect; such claims were once barred, and so stood at the date of the repeal, and the statute does not pretend to give rise to new contracts and liabilities arising out of the old ones, nor to create new considerations as resulting from the previous ones; but if its operation be in favor of the plaintiff it must change the condition of the parties in relation to former contracts by vesting in one a right which he had lost, to the prejudice of the other, by taking from him a defence which he had acquired, thus operating directly on a state of facts which existed at the time, and, indeed, long prior to the date of "its passage. If such be its operation, it would destroy the legal presumptions which had become operative in favor of the defendant, by fixing a liability on a foundation which had been destroyed *192 and become invalid by these presumptions. I do not mean to attach to it the imputation of an Cx post facto law, as defined in 6 Cranch, 138, under the constitution of the United States; and yet it would not be entirely clear of some of the consequences. It is contrary to good policy, repugnant to the spirit of our institutions, and totally incompatible with the legitimate object of laws, that they should he made to operate retrospectively by construction when no such force can be given to them directly; it is doing too much injustice to the legislature to suppose that they intended that this or any other law should have such an effect, and that they would so violate the fundamental principles of legislation, and effect by a circuitous method an object which could not he directly approached. I cannot do better on this point than refer to the opinions of a majority of the court in the case of Dash v. Van Kleeck, 7 Johns. 477. The doctrine of retrospective operation is there fully and ably treated by Chief Justice Kent, who does not hesitate to condemn it in every shape. He does not stop at condemnation, but pronounces such laws void in their operation, as to all rights that they may affect. The case cited is similar in principle, although not in fact, to the present. By the laws of New York the sheriff could not avail himself of fresh pursuit and recaption as á defence to an action for an escape from gaol liabilities. After suit instituted, and before trial, a law was passed au-thorising the sheriff to set up such recaption as a good defence; and it was decided to be inapplicable on the ground that it would be giving to the statute a retrospective operation. Suppose the case had been reversed, and the statute, instead of giving the sheriff the defence, had taken it away from him after; suit and defence pleaded, but before trial; it seems to me, that for the reasons given hy Chief Justice Kent, the court would have sustained his defence as being good at the time of the act for which a recovery was sought, and that it could not be taken from him without some act on his part, because at the time it was a good defence, arising from the act of the party, and I cannot see how it would differ from the present case, unless it he that here the defence arises from the acts of the plaintiff, connected with the supposed act of the defendant, which, if not true in fact are presumed hy the law.
The impropriety of a retrospective effect in statutes is also *193 clearly shown by Judge Chase in the case of Calder and Wife v. Bull and Wife, 3 Dallas’s Reports, 386. His remarks seem to me to bear with particular force on the principle in this case, and in part to cover the very question in dispute. He says that “ every law that takes away or impairs rights vested agreeably to existing laws, is retrospective, and is generally unjust, and may be oppressive; and it is a good general rule that a law should have no retrospect. Every law that is to have an operation before the making thereof; as to commence at any antecedent time; or to save time from the statute of limitations; or to excuse acts which were unlawful when committed and the like, is retrospective.” The act of 1837, as applicable to the present case, must fall within this description of acts and come within the rule laid down in the last two cases.
• In addition to the objections which I have pointed out, I will add one other on what I take to be the true construction of the act of 1837. What was the object in enacting that law? Certainly it was not designed by the legislature to abolish a term of limitation entirely. On the contrary, in relation to all cases included in the 4th section of the act repealed, the time required to create a bar was deemed too long, and three years were substituted in place of six, and in relation to the cause of action included in the 11th section, only one year was added, making the time three years instead of two. So far, therefore, from wishing to extend the time, the legislature has manifested the most conclusive intention to narrow it down in the most numerous class of cases, and in regard to a single description of claims only, to extend the term one year. Is not the object of the legislature as conclusively conveyed to us, as it would have been if they had in so many words said the limitation of six is too long, and three must be substituted? Although the act of 1837 begins by repealing the previous law, yet it still shows the object for the' repeal to be the substitution of a new rule, in place of an old one; and in the same section, the term of three years is prescribed in lieu of six, and so in regard to the repealing of the 11th section. The object of the law, and the intention of the legislature, are too palpable to admit of a doubt, and so far as they govern in the construction of a law of doubtful import the point is clear. Will the language of the *194 statute, and what might be deemed the necessary consequence, justify the calling in aid the intention of the legislature. The intention of the lawgiver, is the best rule of expounding statutes; and when it can be discovered, according to Lord Bacon, it ought to prevail, even though it be contrary to the letter. The rule as laid down in the case of Ham v. McClain, 1 Bays’ Reports, 93, is now acknowledged to be the true one; which is, “ that such a construction as will be consistent with justice, and the dictates of natural reason, though contrary to the strict letter of the law, should be given.” If, then, we may deviate from the strict letter of the law, and call to our aid the intention of the legislature, and the object of the law, and test it by justice and dictates of natural reason, it seems to me, no difficulty can arise in arriving at the construction which should be given to the act. It is entirely improbable, that while the legislature were engaged in merely altering the act of limitations by shortening the time, they either thought or intended for a moment, that the act they were passing, was to have the effect of reviving, by implication, all claims of a particular kind, without regard to the length of time they had been in existence. Such an effect seems nowhere in the act to be desired, and is totally at variance with the subject of the statute, and repugnant to the provisions of it. The object of the legislature, was not to revive stale demands, but to guard against them, and prevent injustice from their introduction; and such being manifestly their intention, it would be gross perversion of it to give their act, by which it was manifested, an effect directly the reverse, and bring to life and light, claims that have been for years slumbering quiet and forgotten by all but the holder, who might happen to be sufficiently dishonest to bring them up at a time when he knew all the evidences of payment, releases, liquidation &c., had been lost or destroyed by lapse of time.
It was to guard against, and not to produce such an effect, that the act was passed. It may be, that it was inadvertent legislation, as it was not confined to contracts that were to be made after the passage of the act; but inadvertence should never be permitted to produce an effect contrary to that intended, when the intention is clear. I think, therefore, that the demurrer should have been overruled.