WALLACE v. THE BRANCH BANK AT MOBILE.

1. *Semble.* The payment of a promissory note or bill, will not destroy its nego-
   tiability when made by the last indorser; or when made by a prior indorser, if
   the subsequent indorsements are struck out, before it is again negotiated.
2. Where a note is put in circulation by fraud, the holder in such case is bound to
   show himself a *bona fide* possessor, and if he fail to do so, it will be a question
   for the jury, whether his possession is not *mala fide*.
3. Where the maker of a promissory note becomes the proprietor of it in the *regu-
   lar course of trade*, (after it had been in circulation) it is extinguished *ipso facto.*
4. If the maker of a promissory note, carries it to a bank to get it discounted on
   his own account, with the name of a third person indorsed thereon; the trans-
   action *on its face*, shows that it is a mere accommodation indorsement, or the
   note would not be in the hands of the maker.
5. The appointment of an attorney by writing, " with full power and authority,
   for me, and in my name, to draw, or to indorse promissory notes, to accept, draw,
   or indorse bills of exchange," does not authorize the attorney to draw, or in-
   dorse notes for the mere accommodation of third persons.

THIS was a proceding by notice under the statute, commenc-
ed by the defendant against the plaintiff in error, in the county
court of Mobile.

An issue being made up and submitted to the jury, the plain-
tiff below to maintain the same, offered in evidence a promissory
note of the following tenor:

"$5,000.                          Mobile, February 24th, 1837.

Sixty days after·date, I promise 'to pay to the order of James
B. Wallace, five thousand dollars, for value received, negotiable
and payable at the Branch of the Bank of the State of Alabama
at Mobile.            '(Signed.)            W. WALLACE.

Indorsed:—JAMES B. WALLACE,

Per JOHN GALLAGHER."

It was also proved, that this note was offered to the Branch
Bank for discount, by W. Wallace the maker thereof, who also
was the last indorser thereon—that it was discounted on the 27th
of February, 1837, and the proceeds passed to his credit—and

that the note was protested at maturity for non-payment, and due notice given thereof to the defendant.

It was further shown that the name of the defendant was indorsed by John Gallagher, under a power of attorney duly executed, and acknowledged on the 10th day of January, 1837— which so far as it confers power, and is now necessary to be recited, is as follows: " Know all men by these presents, that I, James B. Wallace, have nominated, constituted, and appointed, and by these presents do nominate, constitute, and appoint John Gallagher, my true and lawful attorney, with full power and authority for me, and in my name, to draw, or to indorse promissory notes, to accept, draw cr indorse bills of exchange, and to sign any check, or checks, order, or orders, for any money or effects which I now have, or hereafter may have deposited in the Branch of the Bank of the State of Alabama, at Mobile, with power also, an attorney or attorney's for the purpose aforesaid, to make and substitute, &c."

It was also in proof, that the defendant and W. Wallace " were relations, and that there had been an advertisement of a partnership between them, in the Mobile papers, to go into the commission business at New Orleans—and that drafts had been drawn upon such a firm, as described in the papers, composed of the said Wallace's and one Smith. But no evidence was produced, that said defendant had assented or dissented to the publication, or even did any act as a member of the firm. It was further in proof, that John Gallagher was principal clerk in the house of W. Wallace."

Upon this evidence, the defendants counsel moved the court to instruct the jury, that if they believed the note in suit, was made by W. Wallace, and indorsed by John Gallagher, as the attorney of James B. Wallace, to W. Wallace in the course of business between them, such indorsement, operated an extinguishment of the debt, and the bank in virtue of the subsequent indorsement by W. Wallace, could not recover of the defendant. This charge was refused by the court, under an impression that the evidence did not authorize it.

Wallace v. The Branch Bank at Mobile.

The counsel for the defendant further moved the court, to charge the jury, that if they believed, that the note was for the benefit and accommodation of W. Wallace, and the note was offered to the bank by him, and the proceeds passed to his credit by the bank, to enable the bank to recover it, was bound to prove that the defendant authorized Gallagher to sign his name as a surety, or for the accommodation of W. Wallace. That the legal construction of the power of attorney did not so authorize him, and without further proof of authority, the jury ought to find for the defendant. This charge was also refused; and the court charged the jury, that by the construction of the power of attorney, John Gallagher was authorized to indorse the note for *the accommodation of the maker.*" Whereupon, the defendant excepted to the refusal to charge, and the charge given; and his bill of exceptions was signed, sealed, and certified to this court.

The jury having found a verdict for the plaintiff below, and judgment being rendered thereupon, the defendant prosecutes his writ of error, &c.

The case was submitted upon briefs by J. A. CAMPBELL, for the plaintiff, and J. GAYLE, for the defendant.

For the plaintiff it was insisted, that if the maker of a note becomes its proprietor after it has been put in circulation, the debt is *ipso facto* extinguished, and any person taking it with a notice of the fact, even before maturity, will not be allowed to charge the indorser. In this case, W. Wallace was both the maker and indorser, and the defendant in error was bound to take notice.

The note being made by an agent, was itself a circumstance, sufficient to have put the defendant upon inquiry as to the extent of the agent's authority. (1 Litt. Rep. 290; 11 Johns. Rep. 128; 12 Johns. Rep. 160.

Again—where a note is put in circulation by the maker, the inference is, that it was an accommodation note, and a party receiving it, is bound to know whether the maker is authorized to negotiate it. (Stall v. The Catskill Bank, 18 Wendell Rep.)

The power of attorney did not authorize Gallagher to use the name of the plaintiff in error, as an indorser for the accommodation of a third person. 13 Mass. Rep. 178; 18 Johns. 363; 14 Eng. Com. Law 43; 1 Taunt. Rep. 363; 7 Eng. Com. Law Rep. 66; St. John v. Redmond, 9 Porter's Rep. 428; 1 Stewt. Rep. 526. See also, Kingsley *et al.* v. The Bank of the State of Tennessee, 3 Yerger's Rep. 107.

*For the defendant*, it was contended that the note was really indorsed by the plaintiff to the bank, and that the name of W. Wallace was indorsed in conformity to its rules, for the purpose of showing for whose benefit the discount was made.

The evidence shows that it was not a business note, but was made to enable the parties to raise money by its negotiation. The first point made by the plaintiff's counsel does not arise

It was left to the jury to determine, whether the power of attorney was not made expressly for the purpose of enabling W. Wallace to use the name of the plaintiff, in the course of his business at Mobile, and also to be used for the benefit of the firm at New Orleans.

The fact that Gallagher was the principal clerk of W. Wallace, goes to show that the power of attorney was made to enable him to use the name of the plaintiff whenever it might become necessary.

COLLIER, C. J.—It has been held that the payment of a promissory note or bill, even by the payee who had indorsed it, destroyed its negotiable quality. Blake v. Sewell, 3 Mass. Rep. 556. But this decision has been overruled by the court that pronounced it, which after examining its own adjudications, and the leading English cases, say, the doctrine that a " negotiable note once paid, cannot afterwards be transferred, is restrained to cases where by such transfer, some party to the bill or note might be prejudiced or troubled with a suit, who ought to be discharged. As for instance, if there be several indorsers, none shall be allowed to transfer but the last; because if the note is taken up by any prior indorser, and again put in circulation by him, the subsequent indorsers may be exposed to a suit by

the new assignee. But where no such consequence will follow an assignment by the party taking up the bill, it is lawful, and the assignee may maintain an action upon it, in his own name." 17 Mass. Rep. 620, Guild v. Eager and another. The rule as thus qualified, is entirely reasonable, and has been so often affirmed, that we hesitate not to give to it our own assent. On this point see also Bolyton v. Greene, 8 Mass. Rep. 465; Robertson & Co. v. Williams, 5 Mumf. Rep. 381.

In Meade v. Small, 2 Greenl. Rep. 212, the court say, that many cases shew that payment has the effect to destroy the negotiable quality of a bill or note, yet the principle must be received with the limitation, that payment will not destroy such negotiability when made by the last indorser, or when made by a prior indorser, if the subsequent indorsements are struck out before it is again negotiated. To the same effect are Havens v. Huntington, 1 Cowens' Rep. 387; Merrimack Bank v. Parker et al. 7 Pick. Rep. 88, Burbridge v. Manners, 3 Camp. Rep. 194; Callow v. Lawrence, 3 Maule & Selw. Rep. 95; Beck v. Robley, 1 H. Bla. Rep. 89.

Where a note is put in circulation by fraud, the holder in such case is bound to show himself a *bona fide* possessor, and if he fail to do this, it will be a question for the jury whether his possession is not *mala fide*. Woodhull v. Holmes, 10 John. Rep. 231. See also Grant v. Vaughan, 3 Burr Rep. 1516; Peacock v. Rhodes, Doug. Rep. 533; Solomons v. The Bank of England 13 East. Rep. 134, n; Conroy v. Warren, 3 Johns. Cases 259. And in Wardell v. Howell, 9 Wend. Rep. 170, it was decided that where a note has been fraudulently put in circulation by the maker, or his agent, the holder could not recover upon it, against an accommodation indorser without showing that he received it in good faith, in the ordinary course of trade, and paid for it a valuable consideration. To the same point see Skelding & Haight v. Warren, 15 Johns. Rep. 270; Brown v. Taber, 5 Wend. Rep. 566; Vallett v. Parker, 6 Wend. Rep. 615. It is unnecesary to inquire what is to be understood by the " ordinary course of trade," since in the case presented by

the bill of exceptions, there is no room for controversy on the point. The cases cited will, however, show what is meant by it.

If William Wallace became the proprietor of the note in the regular course of trade, after it has become a valid security for money in the hands of the payee, it was *ipso facto* extinguished; inasmuch as it would have answered the purpose of its creation, and the right to receive pertained to, and the obligation to pay was incumbent upon, the maker, and consequently could not have been made available. But there is no proof that the plaintiff in error was at any time the owner of the note, except that which is furnished by his being the payee and first indorser; this might be satisfactory under some circumstances, but it cannot avail in the case before us. In Stall v. The Catskill Bank 18, Wend. Rep. 478, the Chancellor of New York in delivering an opinion in which the court of errors concurred, remarks that "if the maker of a note carries it to a bank, to get it discounted on his own account, with the name of a third person indorsed thereon, the transaction on its face, shows that it is a mere accommodation indorsement, or the note would not be in the hands of the maker." There is no proof tending to show that the note was fraudulently put in circulation by the maker, and the defendant in error could not therefore have been required to show a *bona fide* possession. The mere fact of the plaintiffs indorsement, and the subsequent possession of the note by the maker we have seen, does not warrant the inference that the indorsement was made in the "ordinary course of trade," but rather that it was for accommodation merely; and the charge asked of the court being founded upon the supposition that the indorsement was for value, was consequently unauthorized by the evidence. Whether the possession by the maker of any assignable or negotiable security, after its maturity, would not be presumptive evidence that it was paid, so as to prevent him from transferring it to the prejudice of a surety, or indorser, we need not consider, since, in the case at bar, the note was discounted by the bank, before it was due, and only three days after it was made. See Merrimack Bank v. Parker *et al.,* 7 Pick. Rep. 88.

2. It is said that letters of attorney ought to receive a strict interpretation; the authority never being extended beyond that which is given in terms, or is necessary and usual for executing it with effect. Paley on Agency, 189, '90, ed. 3 Story's Agency, 58, *et post,* and cases cited in both.

The power conferred upon Gallagher, so far as it is material to the present case, is *for the plaintiff and in his name to draw or indorse promissory notes, &c.* It is very clear that there is no express delegation of authority to the attorney to draw or indorse notes for the mere accommodation of third persons; such notes, though they might be drawn or indorsed in his name, certainly would not be for the principal himself. Gallagher's right to make and negotiate paper was not unlimited, but was to be restricted to a transaction in which the plaintiff, at least had the semblance of interest. The evidence in regard to the formation of a co-partnership between the plaintiff, W. Wallace and Smith, for the transaction of a commission business in the city of New Orleans, should not have influenced the court in construing the letter of attorney. Whether that evidence tended to prove that the note was indorsed in order to raise money by its negotiation for the benefit of the plaintiff, was a question referable to the jury under the sanction of the court.

If the power conferred upon Gallagher, did not in terms authorize him to use the name of the plaintiff for the accommodation of others, it cannot be pretended that such an authority is incidental to that which is expressed. The general intention of the plaintiff as indicated by the letter of attorney, was, that Gallagher should transact the business which it particularizes, *for him, and in his name.* And this intent can only be upheld by limiting the authority of the attorney, to cases in which he acts on account of his principal.

The defendant has no right to complain, that the plaintiff by constituting an attorney with power to indorse paper, has induced the Bank to give credit to an unauthorized indorsement, thus made. The letter of attorney was deposited in bank, where it might have been inspected by the directory. But if it

had been otherwise, the indorsement appears *in totidem verbis* to have been made by procuration; and the law is well settled that a person dealing with a special agent, is bound to know the extent of his power. Story's Agency 20, 21, 115, 116, 117; Paley's Agency, 201 '2, 3d ed. and cases cited in both.

The interpretation we have given to the letter of attorney, is defensible not only upon principles of reason, but rests upon the most respectable authority. In Atwood v. Munnings, 7 B. & Cresw. Rep. 278, the principal gave a written power to a person "for him and on his behalf, to pay and accept such bill or bills of exchange, as should be drawn or charged on him by his agents or correspondents, as occasion should require; and generally to do, negotiate, and transact the affairs and business of him (the principal,) during his absence, as fully and effectually as if he were present, and acting therein." It was held that the language employed, conferred an authority to accept bills for the principal, and *upon his individual account*, and did not extend to authorize the acceptance of bills drawn upon a partnership, of which he was a member.

And in Kingsley *et al.* v. The Bank of the State of Tennessee, 3 Yerger's Rep. 107, it appears that Nichols gave a power of attorney to Fletcher in these words, "in my name and behalf to sign and indorse notes payable and negotiable at the *Branch Bank*, &c., as well for discount as collection, and to check for all money which may be deposited therein to my credit, from time to time, until this authority is revoked." It was held this did not authorize Fletcher to make an original indorsement for the accommodation of a third person. The terms in which the power was granted in this case, are very similar to those in the case at bar. See also Decarrey v. Gill, 1 Mood & Malk Rep. 450, Withington v. Herring, 5 Bing. Rep. 442.

As no evidence was offered in aid of the power, we do not feel that we can with propriety inquire whether any, or what auxiliary evidence would be admissible. The view we have taken is decisive of both the points raised, and we have only to add that the judgment of the county court must be reversed, and the case remanded.