## No. 7961.

### MUTUAL NATIONAL BANK vs. J. P. RICHARDSON ET AL.

The rule established in article 326, C. P., debarring a defendant who has denied his signature, from every other defense, does not apply to a partner denying the firm's signature executed by another partner. Affirming 29 An., 546.

A partner cannot use the name of the firm as security for the debt of a third person or of *himself* without special authority from all those composing the firm. A party receiving such security under those circumstances, although not chargeable with actual *mala fides*, does so at his risk and peril, and cannot hold the firm and its other members responsible, unless upon proof of knowledge, consent or ratification. Review of English and American authorities.

APPEAL from the Third District Court for the parish of Orleans. *Monroe, J.*

*T. H. Kennedy* for Plaintiff and Appellee: -

An individual loaning money to one member of a mercantile firm and receiving a firm note therefor, has a right to presume that the note is made in the course of the partnership business and binds all the members of the firm. 46 Iowa, 485.

Whenever a member of the firm gives a note in the firm name, the presumption is that it is given for a partnership purpose. 31 Michigan, 373; Story on Part., by Gray, Jr., p. 253, note 1; p. 255, note 1, and end of preceding notes; p. 193, § 107; p. 194, § 108; 9 Pick. 272, 274.

Declaration by partner that he is borrowing for the firm binds the firm, whether true or not. 16 Barbour, p. 608; 50 Maine, 442.

Plaintiff's title impeachable only by the clearest proof of fraud and *mala fides*, or dishonesty. 68 Maine, 326, 327; 20 Howard, 343; 2 Wallace, 110.

Under the circumstances of this case, taking Cary's individual note was without significance. Story on Part. (same edition), page 255, note 1.

Carrying proceeds of the discount into Cary's account, also insignificant. Story on Part. (same edition), pages 237, 238. Page 236, note, citing opinion of Lord Eldon.

The fact that the firm's signature was in Cary's handwriting, also insignificant. 77 Pa. State Rep. 118; 12 Wright (48 Pa.), 514.

In connection with article 326, see Story on Part. (same edition), p. 191, § 104. The theory of the foundation of the power of the members to bind the firm, withdraws this case from the scope of the decision in 29 An. 546.

*John A. Campbell* and *Bayne & Renshaw* for Defendant and Appellant :

### I.

The plaintiff, a banking corporation of New Orleans, sues the defendant, a merchant of the city, upon two endorsements on notes. The defendant denies his responsibility because he did not sign the partnership name, nor consent thereto, and because they were issued by his partner, Cary, fraudulently, in satisfaction of an individual debt of Cary, with the knowledge of the holder.

The material facts are, that Cary obtained in June, 1879, a discount of his individual note for $10,000 from the plaintiff—to be repaid at the maturity of the note at sixty days after date.

Cary had made a note of Richardson & Cary, payable to M. V. Cary (Cary's wife), for $10,-537.78, payable in January, 1880. He procured his wife to endorse this note and he endorsed it, and left it as *collateral security* to the former note and the discount. This last note was without any knowledge of Richardson, in no affair of the firm, and the firm did not owe Madam Cary one dollar of the sum included. This was therefore a gross fraud.

The sixty days elapsed and the note for $10,000 was not paid.

Cary carried to the bank about $4,000 and four other notes with endorsements of Richardson & Cary thereon made by himself. The makers of these notes are brothers of Cary, who signed their names thereto. The others were procured by Cary to be made, so that he might use them fraudulently to pay off the balance on the $10,000 note.

The notes were not the property of Richardson & Cary, though made payable to them. None of the makers had had dealings with the firm.

They were creatures of Cary. Cary signed some of the notes for the makers and procured the others. The notes were applied to the payment of so much of Cary's debt on the note of $10,000.

## II.

The principles of law we invoke for the defence of the defendant are, 1st, "that to apply the social name to the payment of an individual debt of one of the partners is a revolting abuse of his authority.

That this abuse is shared in by a creditor who consents to profit from it. That when it appears that the primary obligation is the personal debt of the partner, and that the partnership name and credit is employed to discharge it, or to secure it, the other partner is not bound unless his consent has been obtained. 1 Bedarride, des Sociétés, No. 159; 40 Dalloz, Jurisp. Gen., Société, No. 927; Pothier on Part., § 101; Kendall vs. Wood, L. R., VI Exch., 243; Leveson vs. Lane, 13 C. B. R , N. S. 278; Rogers vs. Batchelder, 12 Peters, S. C. R. 221; Maulden vs. Br. Bank, 2 Ala. R. 502; Catskill Bank vs. Stall, 18 Wend., 466; Satterfield vs. Compton, 6 Rob., 120; Chitty on Cont., 11 Ed., 354-5; Add. on Cont., 76. Coll on Cont., § 401, 478.

The original debt to the plaintiff originated in a loan of money on an individual note of Cary for the sum of ten thousand dollars for sixty days. Cary negotiated the loan and obtained the money.

He left as security for this personal loan a note of Richardson & Cary to his wife, and procured her endorsement upon it and passed it. The facts leave no doubt that Cary was acting in fraud of his firm and in fraud of the bank in offering as security the social name for his individual use, and the name of his wife, who was incapacitated by the Code from making the engagement. The facts were patent to the bank and the bank acquired no right. Cases cited supra; Leckie vs. Scott, 10 La. 416; 1 Daniel, Negot. Notes, 273, 274.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff seeks to hold J. P. Richardson, as a member of the firm of Richardson & Cary, liable for two notes, endorsed by G. W. Cary, the other member, in the name of the firm. Cary confessed judgment, but Richardson resists, on the ground that the endorsements were made by Cary, for his personal use, fraudulently, to plaintiff's knowledge.

On the trial, the notes sued upon were offered to be introduced in evidence ; but the defendant objected, unless the endorsements were first proved to be genuine. The objection was sustained, the proof was administered and the notes with the endorsements were introduced in evidence.

Thereupon the plaintiff's counsel moved the court for judgment against Richardson, in furtherance of the provisions of Art. 326, C. P. ; but the court declined so to do, on the ground that the law did not apply to a member of a firm, denying the firm's signature, executed by

83

another member of the firm. To this ruling the plaintiff excepted, and' the trial of the case was proceeded with.

There was judgment for the plaintiff, and Jno. P. Richardson has appealed.

The article invoked reads:

" The defendant, whose signature shall have been proved, after his having denied the same, shall be barred from every other defense, and judgment shall be given against him, without further proceedings." C. P. 326.

In 29 An. 546, construing that article, with the preceding ones, the Court held that it could receive application in those cases, *only*, in which the defendant was sued on his *personal* signature, and, being punitory in its character, it could not be extended, by implication or analogy, to cases not clearly within its terms. The view expressed was declared to be in harmony with Art. 2244 R. C. C., which authorizes heirs or assigns simply to declare that they know not the handwriting or signature of the person they represent, and the ruling in 1 An. 325 is cited in support.

But for those textual provisions of our Codes, and for the judicial exposition made of them, the allegorical saying, that a firm has as many right hands to sign with as it has members who compose it, might receive application; but, in presence of the law and of .the jurisprudence upon it, it remains, in this instance, without bearing. The ruling of the lower court on the motion, being correct, receives our sanction.

The evidence in the record establishes that, on the 11th of June, 1879, the individual note of G. W. Cary, for ten thousand dollars ($10,-000), at sixty days, secured by the pledge of a note of Richardson & Cary, dated May 7th, 1879, to the order of and endorsed by Mrs. M. V. Cary, payable on January 1st, 1880, for $10,537.78, was discounted by the plaintiff and the proceeds placed by the bank to his credit, in his individual account.

That first note was not paid at maturity, but a few days afterwards a partial payment was made by Cary, in cash. He then offered for discount, to the bank, four notes, which were accepted, and the proceeds realized by the discount, without passing through Cary's hands at all, were applied to the extinguishment of the amount remaining due on the $10,000 note, which was then, with the collateral, delivered up to him.

Two of the four notes were subsequently paid by Cary, but the two remaining ones, not having been taken up, are now sued upon. That for $2,871 is drawn by W. A. & C. W. Cary, and that for $871 is drawn by Leigh Watkins, to the order of and endorsed by Richardson & Cary, through G. W. Cary. Proper evidence of non-payment, protest and notice, is in the record. No resistance is made owing to the want of any formality in those proceedings.

We do not attach any importance to the surrounding circumstances under which the original transaction occurred between Cary and the bank's vice-president, whose respectability, entire good faith and reliability are far above all suspicion. It is sufficient that the fact exists, to plaintiff's knowledge, that the partnership signature and property, apparently belonging to it, were used by Cary for the purpose of redeeming his individual note, and for his individual advantage, to debar recovery against J. P. Richardson, who is not shown to have either known or authorized the unusual and fraudulent course pursued by Cary, to the injury of the plaintiff.

An attempt was made to connect the transaction with a purchase of exchange for $15,000 for and by Richardson & Cary; but the two operations were essentially distinct and were not equally known to the two partners. That of Cary was not known at all to Richardson, although that by Richardson, who bought the exchange, may have been, and no doubt was, to Cary's knowledge.

Evidence was adduced that the exchange operation was conducted and carried on by the firm in the regular course of its business and for its legitimate purposes. That transaction, from whatever standpoint considered, cannot be viewed as, in any manner, susceptible of relieving the plaintiff from the consequences flowing from a knowledge of the circumstances of the several negotiations with Cary.

The authorities are numerous and indisputable, that a partner cannot use the name of the firm as security for the debts or liabilities of a third person, or *of himself*, without special authority from all those composing the firm. A party receiving the same under those circumstances, although not chargeable with actual *mala fides*, does so at his risk and peril, and cannot hold the firm and its other members responsible, *unless* upon proof of knowledge, consent or ratification.

A partner, it is true, may, as far as the question of *physical power* may go, but not as far as that of *moral right* may exist, take the money of the firm, and by a reprehensible appropriation, apply it to the discharge of his personal obligations; but this is so for the sole reason that, as money has no ear-marks, creditors who are offered to be paid, are not bound to inquire into the title of the debtor proposing payment. In some instances it might be derogatory or insulting, and in other cases it might be imprudent to do so. Pothier on Partnership, § 101; 40 Dalloz, J. G. Société, No. 927; Debarride, Droit Com. des Sociétés, No. 159.

"If a creditor of one of the two partners choose to take from his debtor what he knows to be partnership securites, or partnership funds, without ascertaining whether the debtor has the authority of his partner as to the application of partnership funds, he does so at his own peril, and it is not enough that he has even a reasonable cause to be-

lieve in the existence of the authority." Kendall vs. Wood, Law R. VI, Ex. 243; Leveson vs. Lane, 13 C. B. R. N. S. 278; Parsons. Also, Maulden vs. Branch Bank, 2 Ala. 502, 512, 513; 18 Wend. 466; 1 Ala. 565; 6 R. 120.

In *ex parte* Golding (Collyer on Partnership, 283), Lord Lyndhurst said : " No principle can be more clear than that, where a partner and a creditor enter into a contract on a separate account, the partner cannot pledge the partnership funds, or give the partnership acceptances in discharge of the contract, so as to bind the firm." The judgment was put on the ground that, unless the other partner assented to the transaction, he was not bound, and that it was the duty of the creditor to ascertain whether there was such assent or not.

In Dob vs. Halsey, 16 Johns. 34, the difference between English and American jurisprudence was said to be merely on the question of *onus,* it being there on the partner sought to be held responsible, while it is here on the creditor seeking payment. It was there said that there exists no substantial difference whether the note of a firm be taken for a private debt of one of the partners by a separate creditor of a partner pledging the security of the firm and taking the property of the firm to pay his private debt. " In both cases the act is equally injurious to the other parties. It is taking their common property to pay a private debt of one of the partners." 7 Wend. 326; 6 Johns. 251.

In Rogers vs. Batchelder, 12 Peters, 221, the U. S. Supreme Court, Justice Story being its organ, said : " Whatever acts are done by any partner in regard to partnership property or contracts, beyond the scope of the partnership, must, in general, to bind the partnership, be derived from some further authority, expressed or implied, conferred on such partner, beyond that resulting from his character as a partner. Such is the general principle, and in our judgment.it is founded on good sense and reason. One man ought not be permitted to dispose of the property, or bind the rights, of another, unless the latter has authorized the act. In the case of a partner paying his own debt out of the partnership funds, it is manifest that it is a violation of his duty and of the right of his partners, unless they have assented to it. The act is an illegal conversion of funds." 13 East. 175; 2 Starkie, 347.

See, also, Daniel on Neg. Inst., p. 273, and cases cited; 10 L. 416; Chitty on Cont., 11 ed. 354; Addison on Cont., 76; Collyer on Part., 283; Collyer on Cont., ¿ 401, 478; Story on Part., Sec. 128, 140; Parsons on Part., 2d. ed. p. 221.

If it be true that operations of the character of that under consideration, are not of unfrequent occurrence in this commercial community, it is more than time that the law governing in such cases be clearly announced, as well for the security of money lenders, as for that of too

reliant partners, and for the denunciation of ill-designed and ill-doing associates, unworthy of the confidence placed in them by their fellow members and their fellow men.

We have carefully considered the points made and the authorities quoted by plaintiff's learned counsel; but, while we concede the respectability and earnestness of those authorities, we cannot admit that, under the circumstances of this case, they can justify us in fixing upon the defendant, Richardson, the liability for which he is sought to be made responsible. The presumptions claimed as existing in favor of the plaintiff are rebutted by the circumstances surrounding the original, main and subsequent negotiations between the parties.

See further, Parsons, Ed. 1873, vol. 1, pp. 184, 221, 228; 2 Miss. 183; 15 Geo. 197; Chitty on Bills, p. 48; 6 B. Monroe, 60; 4 Wendell, 168; Daniels on Neg. Inst., vol. 1, pp. 276, 278; 3 Kent, 63; Collyer on Part., 544, 127, 490, 491; 1 Starkie, 275: 30 Vt. 225; 25 Ala. 475; 12 Pet. 299; 28 An. 941; 10 L. 416; 5 L. 49.

We are unable to concur with our learned brother of the District Court.

It is, therefore, ordered and decreed that the judgment appealed from by J. P. Richardson be reversed as far as it affects him, and it is now ordered, adjudged and decreed that there be judgment in favor of said J. P. Richardson, rejecting plaintiff's demand, with costs in both courts.

Rehearing refused.

Mr. Justice FENNER recuses himself, having been consulted as counsel.