(76 South. 926)

OWINGS LUMBER CO. et al. v. MARLOWE. (6 Div. 463.)

(Supreme Court of Alabama. Nov. 15, 1917.)

1. BILLS AND NOTES ⬸438 — PROMISSORY NOTES—RETURN TO MAKER AS COLLATERAL—EFFECT.

Where a promissory note is given its maker as collateral for a debt to him, it is not thereby discharged.

2. BILLS AND NOTES ⬸438 — PROMISSORY NOTES—TRANSFER TO MAKER—DISCHARGE—REVIVOR.

Although a promissory note coming into the hands of its maker in due course is extinguished ipso facto, it is revived along with all its securities by a transfer.

3. PLEDGES ⬸30(2)—COLLATERAL MORTGAGES—INJUNCTION—CUTTING TIMBER.

A mortgagee may foreclose a collateral mortgage and enjoin the cutting of timber if necessary to protect the security for the collateral mortgage, and it is immaterial that the principal mortgage is well secured; the mortgagee succeeding to the equitable rights of the principal mortgagor, to whom alone he must account.

4. PLEDGES ⬸31(1)—PROTECTION OF SECURITY—INJUNCTION—INSOLVENCY.

Although insolvency of a mortgagor would aggravate the necessity for injunction against cutting timber on mortgaged land to protect the security, it is not necessary to the equitable right to enjoin impairment of the security.

Appeal from Chancery Court, Pickens County; Thomas H. Smith, Chancellor.

Bill by Marilou Marlowe against the Owings Lumber Company and another to foreclose a mortgage and enjoin cutting of timber. A temporary writ of injunction was granted, and from a decree overruling a motion to dissolve and discharge the writ, respondents appeal. Affirmed.

Complainant advanced $4,000 to Mrs. Lida H. Jones, and on February 25, 1913, Mrs. Jones and husband executed to complainant their promissory note for that sum, secured by a mortgage, not made an exhibit to the bill, and secured additionally by the assignment to complainant as collateral security a certain mortgage executed by W. H. Owings to Mrs. Jones on November 7, 1911, with a debt due of $2,800, and interest, and covering the 800 acres of land here involved, and being the mortgage here sought to be foreclosed. The respondents' answer showed by exhibit that the direct security given to complainant was a mortgage upon town lots and country lands which were alleged to be worth, and which the affidavit showed to be worth, about $11,000. The answer also showed the intervening history of the Owings mortgage to be as follows: It was assigned by the mortgagee, Mrs. Jones, to a Gordo bank on December 19, 1911, as collateral security for her note for a debt of $3,156.50. After default in payment on December, 1912, said bank transferred and sold Mrs. Jones' note for a recited cash consideration of $3,222.83 to said W. H. Owings, assigning with it the principal mortgage directly securing it, and also the Owings mortgage and note held by said bank as collateral. Thereafter, on March 15, 1913, for a consideration of $3,399.33, Owings "granted, bargained, sold, and conveyed" to complainant the Jones note and mortgage, and also the Owings note and mortgage, "together with the premises therein described." The deed contains the recital:

"This transfer and assignment is made without any warranty or guaranty of title to any of the property mentioned in either of said mortgages above described, and without recourse of any liability whatever on us."

The cause was submitted on the motions to dissolve and discharge the injunction, on the sworn bill and sworn answer, and a number of affidavits showing the value of the security held by complainant outside of the Owings mortgage, and the value of the lands in the Owings mortgage with and without the timber.

----

Curry & Robinson, of Carrollton, for appellants. Patton & Patton, of Livingston, and H. A. & D. K. Jones and Verner & Rice, all of Tuscaloosa, for appellee.

SOMERVILLE, J. It has been held in this state, in line with the general current of authority, that:

"Where the maker of a promissory note becomes the proprietor of it in the regular course of trade (after it had been in circulation), it is extinguished ipso facto." Wallace v. Br. Bk. Mobile, 1 Ala. 565.

[1, 2] The respondent Owings did not become the owner of his own note to Mrs. Jones. He received it merely as collateral security for Mrs. Jones' note to the bank. Mrs. Jones' note was the principal obligation, and of it Owings did become the owner. His interest in his own note was limited and conditional. It was but a collateral security appendant to the Jones note, and when he transferred the Jones note to complainant, he transferred its collateral security with it. The rule first above stated has no application to such a case. But, apart from this, even if a promissory note were discharged by its transfer in due course to its maker, the maker may revive it by transferring it to another, and, as to the maker, the note and all of its securities are thereby continued in force as a new and primary obligation. The deed of transfer executed by Owings and his wife to complainant for a valuable consideration recognized the Owings note and mortgage to Mrs. Jones as valid and subsisting obligations, and operates as a complete estoppel against the claim now made by Owings that they had been discharged.

[3] Complainant's contention is that the sufficiency of the lands as security for the Owings note to Mrs. Jones is the only question presented by the bill, and not whether complainant has a sufficient margin of security for her claim against Mrs. Jones, outside of the timber on the lands in the Owings mortgage.

Respondents' contention, on the other hand, is that the question is whether complainant has sufficient security for her $4,000 note from Mrs. Jones, apart from the timber on the Owings lands; and, if so, then there is no ground for equitable intervention by injunction. If complainant's contention is correct, the pleadings and evidence fully support the chancellor's ruling. If, on the other hand, respondents' contention is correct, we think the chancellor's action was erroneous, since on the undisputed evidence complainant has as security for a $4,000 debt, with interest, lands worth about $12,000, without the timber here sought to be preserved.

But complainant does not seek to foreclose her own mortgage from Mrs. Jones. On the contrary, she is proceeding to foreclose only the Owings mortgage to Mrs. Jones, and in so doing she is in equity but the agent of Mrs. Jones, exercises the rights of Mrs. Jones, and must account to her for the proceeds of this property. In this aspect of the case complainant succeeds to and is entitled to enforce the equitable rights of Mrs. Jones, exactly the same as if Mrs. Jones were here suing in her own person.

We conclude, therefore, that complainant is, upon the showings submitted to the chancellor, entitled to the retention of the writ of injunction pending the final decree, under the principles declared in Moses v. Johnson, 88 Ala. 517, 7 South. 146, 16 Am. St. Rep. 58.

[4] While the insolvency of the mortgagor, Owings, or of his vendee, the Owings Lumber Company, would aggravate the necessity for protection of the security by injunction, such insolvency is not an element of the equity here invoked. The rule is that:

"If the threatened injury is irreparable in its nature, as in the cutting of timber, and so impairs the mortgage security as to render it inadequate, the mortgagee may have an injunction without averring or proving the insolvency of the mortgagor." 1 High on Injunctions (4th Ed.) § 480.

Indeed, why should the law allow a mortgagee to be stripped of the security upon which he has relied, and remitted to a purely personal remedy against the mortgagor? The wrong is not in merely rendering the mortgage debt uncollectible, but in rendering it insecure, and impairing, if not destroying, its commercial value.

Let the decree be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.