BUCK, Respondent, v. FIRST NATIONAL BANK, et al, Appellant.

(260 N. W. 834.)

(File No. 7673. Opinion filed May 20, 1935.)

*Lewis W. Bicknell,* of Webster, for Appellants.
*Carl B. Halls,* of Webster, for Respondent.

CAMPBELL, J. Plaintiff Buck was indebted to the First National Bank of Bristol upon two demand promissory notes aggregating $86.25. These notes were secured by a chattel mortgage on a horse, which in the summer or fall of 1929 the plaintiff sold without the bank's consent. The bank thereupon requested some other security for the debt, and plaintiff delivered to the bank in pledge as collateral security for the payment of his notes a promissory note payable to plaintiff executed by his brother-in-law, Otto Stoll, bearing date in 1926, due March 1, 1930, for the principal sum of $955, on which there had been paid the sum of $55 on the principal and interest up to the year 1928. On March 17, 1931, the bank sold the two Buck notes aggregating $86.25 to Stoll, the maker of the collateral note, receiving therefor the sum of $36.25 in cash and a note for $50, which was presently paid. At the time of selling the Buck notes to Stoll and as a part of said transaction, the bank likewise transferred and delivered to Stoll his own note which the bank had previously held as collateral to the Buck notes. The Stoll note was not itself sold to Stoll or transferred to him absolutely or in his own right, but passed to him as collateral security appurtenant to the Buck notes which he had purchased, as evidenced by the written receipt given by Stoll to the bank at the time, which was in the following language:

"Mar. 17, 1930.

"Received of Citizens Nat'l Bank, Bristol, S. D. One note on Walter Buck, dated 12-6-29 due on demand for $23.25 and one note on Walter Buck for $63.00 dated 12-6-29 due on demand, also one note given by Otto Stoll to Walter Buck for $955.00. Bal due on same $900.00. This note is collateral security for two above mentioned notes on Walter Buck, being purchased by me."

When Buck learned of this situation, he took the position that the transfer of the Stoll note to Stoll by the bank constituted a conversion thereof and instituted this action for damages, naming as defendants the bank and Lundeen, its principal managing officer who had personally handled the transaction above described. Issue was joined and the case came on for trial. The learned trial judge took the view that the transfer of the Stoll note to Stoll amounted to a conversion thereof, even though the same was transferred to Stoll as a part of and in connection with the sale to Stoll of the Buck notes to which it was collateral, and he instructed the jury

as follows: "You are instructed as a matter of law, that while the owner of a note may ordinarily sell such note together with its collateral security, such owner may not lawfully sell the same to the person who is indebted on the collateral security if the collateral security amounts to more than the debt which it secures. Therefore, in this case, you are instructed that the sale of the Buck notes for $86.25 and the delivery of the Otto Stoll note for $900 and interest by defendants to said Stoll was a wrongful conversion and misappropriation of said $900 Stoll note on the part of the defendants; and if such action by the defendants resulted in injury to the plaintiff, he is entitled to recover judgment therefor. The questions for you to determine in this case are, first,—was the plaintiff injured or damaged by the action of the defendants in surrendering or assigning said $900.00 Otto Stoll note to the said Stoll; and, if so, in what amount he was damaged."

The jury returned a general verdict in favor of plaintiff assessing his damages at $450. From judgment thereon and from denial of their application for new trial, defendants have appealed.

Implicit in the verdict of the jury under the court's instruction there is, of course, a finding that the Stoll note at the time of the claimed conversion was worth $450 in excess of the amount due on respondent's notes. Appellants urge that the evidence is entirely insufficient to support the finding that the Stoll note at said time was worth $450 or indeed, any substantial sum whatsoever. We think there is much force in this contention, but we believe we need not decide the point in this case.

It is apparent that respondent in instituting this action and the learned trial judge in instructing the jury much relied upon the language of this court set forth in the case of Aulwes v. Farmers' Bank of Humboldt (1921) 44 S. D. 92, 182 N. W. 528, 529, wherein it is said:

"Appellant cites numerous authorities in support of its contention that the holder of collateral security for the payment of a debt may sell such debt and transfer the collateral security to the purchaser. This is a general rule of law, but it does not authorize a pledgee to surrender a negotiable instrument to the maker. By subdivision 5 of section 1822, Rev. Code:

" 'A negotiable instrument is discharged: * * * When the

principal debtor becomes the holder of the instrument at or after maturity in his own right.'

"The collateral note and check were both overdue when they were transferred to Meyer by the defendant; therefore both became discharged when they came into Meyer's hands and his obligation thereon was extingushed. This left plaintiff without redress for the difference between what was due him from Meyer on the note and check and what plaintiff owed the defendant, except to proceed against defendant as for conversion."

In its holding on this particular point the Aulwes Case, so far as we have been able to discover, stands alone and we think it is not good law. See criticism thereof in Brannan, Negotiable Instruments Law (5th Ed.) p. 899.

██ ██ The purpose of pledging collateral is to secure the payment of the principal debt and it is fundamental that a pledge, like any other security, follows the debt. In the absence of agreement otherwise, and unless prohibited from so doing by contract or statute, the pledgee may sell the principal debt and as ancillary to said sale transfer the collateral to the purchaser, so long as he refrains from doing anything to deprive the pledgor of his right to redeem the pledge on paying the amount due on the principal debt. The defect in the holding of the Aulwes Case above quoted lies in the assumption that a man who receives his own note as collateral to other notes which he has purchased becomes the owner and holder of his own note "in his own right" within the meaning of the Negotiable Instruments Law (subdivision 5, § 119, Uniform Negotiable Instruments Law; subdivision 5, § 1822, Rev. Code 1919). We think this assumption unwarranted and erroneous. Stoll did not acquire his own note absolutely or without restrictions. He admitted by the receipt he signed that he acquired it and was entitled to hold it solely as collateral to the Buck notes which he purchased. He held it, and was obligated as a matter of law to hold it, subject to the same terms, conditions and limitations as any other holder of collateral; and it seems very plain that when Stoll received his own note in this fashion, his liability thereon was not discharged. The Alabama court has treated the situation very clearly in the case of Owings Lumber Co. et al. v. Marlowe (1917) 200 Ala. 568, 76 So. 926, 927, L. R. A. 1918E, 155, in the following language:

"It has been held in this state, in line with the general current of authority, that:

" 'Where the maker of a promissory note becomes the proprietor of it in the regular course of trade (after it had been in circulation), it is extinguished ipso facto.' Wallace v. Branch Bank at Mobile, 1 Ala. 565.

"The respondent Owings did not become the owner of his own note to Mrs. Jones. He received it merely as collateral security for Mrs. Jones' note to the bank. Mrs. Jones' note was the principal obligation, and of it Owings did become the owner. His interest in his own note was limited and conditional. It was but a collateral security appendant to the Jones note, and when he transferred the Jones note to complainant, he transferred its collateral security with it. The rule first above stated has no application to such a case."

Stoll having acquired his own note solely as collateral to the Buck notes, we agree with the Alabama court that the statute did not operate to discharge his liability thereon. Consequently, we can no longer approve the announcement of the Aulwes Case to the effect that it constitutes a conversion of collateral to sell notes representing a principal debt (accompanied by a collateral note which passes as collateral only) to the maker of the collateral note.

In the instant case, the bank had a perfect right to sell the Buck notes and transfer the Stoll note to the purchaser as collateral thereto. It did sell the Buck notes, receiving full value therefor, and did transfer the Stoll note as collateral to the Buck notes and not otherwise. Respondent in his brief not only concedes but, indeed, argues that the bank sold the Buck notes to Stoll and transferred and delivered his own note to him as collateral thereto, saying: "Exhibit 1, prepared by defendant Lundeen and signed by said Otto Stoll, designated as a 'receipt' by said Lundeen (page 9 Appellants' Brief, part 1) which Exhibit 1 is set forth on page 2 of Appellant's Brief part II, the closing paragraph of which is 'This note is collateral security for two above mentioned notes on Walter Buck, being purchased by me' makes it absolutely clear that the defendants simply sold and delivered to Otto Stoll the Buck notes to the bank, together with the $900.00 Otto Stoll note to said Buck."

As above set forth, we think the Aulwes Case was in error in declaring that such transaction amounted to a conversion of collateral for the reason that maker of the collateral note was thereby discharged. We think he was not thereby discharged. We think the liability of Stoll upon the collateral note continued to be exactly what it was before, and we think respondent Buck continued to have the same rights against Stoll with reference to such collateral that he had previously had against the bank or that he would have had against any other purchaser who might have acquired his notes from the bank and received the collateral note with them. His right of redemption of his pledge was in no manner interfered with. He can go to Stoll (just as he could have gone to any other purchaser), pay the amount due upon his own notes and demand the return of the collateral; and if it is not surrendered to him, he can sue Stoll for conversion. That is all that he could do if the purchaser had been some third person instead of Stoll.

We think respondent has failed to establish any conversion by appellants or either of them in this case. Appellants moved for a directed verdict at the close of all the evidence, and we think such motion should have been granted. The judgment and order appealed from are therefore reversed, and the cause is remanded, with directions for entry of judgment in favor of appellants pursuant to their motion for directed verdict.

WARREN, P. J., and ROBERTS and RUDOLPH, JJ., concur.

POLLEY, J., absent and not participating.